## The Citizens Fire and Marine Ins. Co. v. Short.

**Fire Insurance.** — *Overvaluation.* — *Fraud.* — *Mistake.*—A mistaken, but honest, overvaluation of property insured against loss by fire, made by the owner in his application for insurance, is not a fraudulent overvaluation which will defeat a recovery by him.

**Same.**—*Verdict.*—Where the defence of a fraudulent overvaluation is tendered by the defendant, a verdict by the jury, for the plaintiff, for less than the face of the policy, is, in effect, a finding that there was a mistaken, but honest, overvaluation.

**Bill of Exceptions.**—*Instructions.*—A bill of exceptions, in setting out instructions given to the jury, recited that the court gave a certain instruction, " in which the court read to the jury an extract from the opinion of " a certain court in a certain case, from a certain law- periodical, " in the words and figures following," setting out such extract in writing.

*Held,* that the Supreme Court must presume that such extract had been transcribed before it was read.

**Evidence.**—*Impeaching Witness.*—A witness who has been contradicted by

the deposition of another witness, in relation to material testimony given by him, may, where the proper ground has been laid, be used to impeach the deponent on some other point.

From the Vanderburgh Circuit Court.

*A. Iglehart* and *J. E. Iglehart*, for appellant.

*C. Denby* and *D. B. Kumler*, for appellee.

Howk, C. J.—This was an action by the appellee, against the appellant, upon a policy of insurance against loss or damage by fire.

The policy was executed by the appellant, to the appellee, on the 1st day of March, 1876, and by said policy.the appellant, for a valuable consideration then paid, insured the appellee for three years, from and after said last named day, in the sum of five hundred and fifty dollars, against loss or damage by fire to three certain buildings, owned by the appellee, and particularly described in said policy.

It was alleged in the complaint, that, after the execution of said policy, on the —— day of ——, 1876, the buildings described in said policy, of the aggregate value of seven hundred and twenty-one dollars and ten cents, became and were consumed and wholly destroyed by fire; that said fire occurred by accident, and did not happen by any of the causes excepted in said policy, of all which the appellant had due and legal notice on the —— day of ——, 1876, and more than sixty days before the commencement of this suit, in the manner and form required by the appellant, and according to the conditions of said policy; that the appellee had been damaged by the burning of his said buildings in said sum of seven hundred and twenty-one dollars and ten cents and over; and that the appellant had failed and refused to pay said damages, or any part thereof.

The sufficiency of the appellee's complaint is not called in question in this court, and therefore we have only stated enough of its averments to show the nature of the action.

The appellant answered in two paragraphs, in substance as follows:

1.   A general denial; and,

2.   That said policy of insurance was issued, delivered and received upon the express agreement, stipulation and condition, that the appellee should and would state the fair, honest and true value of said insured property to the appellant's agents, who issued said policy, and that the appellant would take a risk upon the same to the extent of three-fourths of the fair, actual cash value thereof and no more, and upon the further express consideration, that, if the appellee should make any overvaluation of said property; said policy should be void; and the appellant said, that, well knowing the premises, the appellee, fraudulently intending to cheat and defraud the appellant, wilfully, falsely and fraudulently stated to the appellant's agents that the said dwelling-house was of the value of four hundred dollars; that the said barn was worth two hundred dollars; that said warehouse was worth one hundred dollars; that the whole were worth seven hundred dollars; and that the said several sums were the true and fair cash value of said several houses, and that said last named sum was the fair cash value of the whole of said buildings; whereas, in fact and in truth, as the appellee well knew, the said dwelling-house was worth less than one hundred dollars, and said other houses were utterly worthless; and that the fair cash value of all said houses was less than one hundred dollars.   Wherefore the appellant said that said policy was fraudulent and void when it was issued, and the appellee ought not to recover.

The appellee replied by a general denial to the second paragraph of said answer.

The issues joined were tried by a jury, and a verdict was returned for the appellee, assessing his damages in the sum of two hundred and fifty dollars.

The appellant's motion for a new trial was overruled, and to this ruling the appellant excepted, and judgment was rendered on the verdict.

The alleged errors of the court below, assigned by the appellant in this court, were as follows :

1.   In overruling its motion for a new trial; and,

2.   In rendering final judgment on the verdict.

In its motion for a new trial the appellant assigned the following causes therefor, to wit :

1.   The verdict was contrary to law;

2.   The verdict was not sustained by sufficient evidence ;

3.   The court erred in admitting the testimony of C. D. Clark, a witness for the appellee, to impeach the testimony of Mrs. Ewing Jarrett and to contradict her deposition ;

4.   The court erred in refusing the sixth instruction asked by the appellant;

5.   The court erred in reading to the jury its own written instructions ;

6.   The court erred in reading to the jury from the " Chicago Legal News, " as an instruction ;

7.   The court erred in reading to the jury, as an instruction, portions of " May on Insurance," section 373, from the word " *but*," in the middle, to the close of said section, on page 453 ; and,

8.   The damages assessed by the jury in their verdict were excessive ; the recovery therein was too large.

The first point presented by the appellant's learned attorneys, in their argument of this cause in this court, arises under the fourth cause for a new trial, namely, the refusal of the circuit court to give the sixth instruction asked for by the appellant.   This sixth instruction was as follows :

" 6.   If the plaintiff attempted to state the value of his buildings, upon which he sought insurance, he was bound to know the value; and if, from the evidence, it appears that he made a *gross*  misstatement of the value, the presumption that it was wilful is conclusive."

In our opinion, the court properly refused to give this

instruction. For, although it was stipulated in the policy in this case, that, if there was an "overvaluation" of the property insured "this policy shall be void," yet it cannot be said, as matter of law, we think, that the mere overvaluation of the insured property, however gross it might appear to have been, was necessarily and conclusively wilful and fraudulent. The instruction utterly ignores the fact that the appellee might have been mistaken, grossly even, yet honestly, in his valuation of his buildings, upon which he sought insurance. It is not uncommon nor unnatural for the owner of property to entertain, honestly, more enlarged views of the value thereof, than perhaps he would if he had no proprietary interest therein. It seems to us that the overvaluation of insured property, though to third persons it might seem to be gross, would not and ought not to avoid the policy, unless it appeared to be wilful, false and fraudulent. If the overvaluation was gross, that fact might properly be considered by the jury as evidence, but not as conclusive evidence, of the wilful, false and fraudulent character of the overvaluation.

In the case of *Franklin Fire Insurance Co.* v. *Vaughan*, 2 Otto, 516, the Supreme Court of the United States approve of this statement of the law, on the subject of the overvaluation of the property insured, by the party insured :

"The law exacts the utmost good faith in contracts of insurance, both on the part of the insured and the insurer; and a knowing and wilful overvaluation of property by the insured, with a view and purpose of obtaining insurance thereon for a greater sum than could otherwise be obtained, is a fraud upon the insurance company that avoids the policy. * * It is a question of good faith and honest intention on the part of the insured; and though he may have put a value on his property greatly in excess of its cash value in the market, yet if he did so in the honest belief that the property was worth the valua-

tion put upon it, and the excessive valuation was made in good faith, and not intended to mislead or defraud the insurance company, then such overvaluation is not a fraudulent overvaluation that will defeat a recovery."

This, we think, is a correct statement of the law on the subject now under consideration; and therefore we hold that the court did not err in refusing to give the jury the sixth instruction, asked for by the appellant in this case.

The appellant's counsel complain, in this court, of the action of the court below, in reading to the jury from the " Chicago Legal News," and from " May on Insurance," as instructions, after the appellant had requested written instructions. It would seem from the briefs of the learned counsel of both the appellee and the appellant in this court, that, in giving the instructions complained of, the circuit court had probably read to the jury the extracts from the " Chicago Legal News," and from " May on Insurance," without having transcribed those extracts into its written instructions. The record, however, does not disclose any such state of facts, but indeed the very reverse; and to us the record imports " absolute verity." It appears from the record, that the court " further gave instruction No. 9, in which the court read to the jury an extract from the opinion of the court, in the case of *The Franklin Insurance Company* v. *James S. Vaughan*, from the Chicago Legal News, which is in the words and figures following:" and then followed the extract in writing. The record then proceeds : " To the giving of which said 9th instruction, marked A, and the reading of said extract to the jury, the defendant at the time excepted." This extract from the record does not show, that the court read to the jury, from the Chicago Legal News, the extract set out; nor that said extract was not transcribed from said Chicago Legal News into the instruction, and was not read from the manuscript to the jury. The record brings

before this court, in manuscript, an extract from the Chicago Legal News, as the 9th instruction of the court to the jury; and this instruction, in manuscript, is followed by the statement of the appellant's exception: "To the giving of which said 9th instruction, marked A, and the reading of said extract to the jury, the defendant at the time excepted." It will be observed, that the exception is not to the reading from the Chicago Legal News, but to the reading of an extract, in manuscript, as the record shows, from said Chicago Legal News. The same remarks will apply, with equal force, to the extract from "May on Insurance," which constituted the 10th instruction of the court to the jury, and which was complained of by the appellant's counsel on precisely the same grounds. The same language is used in giving this extract to the jury, and in saving an exception thereto; and we cannot say therefrom, that the court read from the book the extract referred to, as an instruction to the jury, without having the extract transcribed into the written instruction. Indeed, as before stated, we think that the record discloses the very reverse of any such state of facts, and we are governed by the record.

This objection of the appellant's attorneys to these instructions of the court does not apply to the law as stated therein, but merely to the form or mode in which they were given to the jury. The objection must, therefore, be regarded as purely technical. Such an objection must be formally and technically sustained by the record, or it will not be favorably entertained and acted upon by this court. In this case the record does not show, by any fair construction, that the instructions were read to the jury without having been first transcribed from the legal newspaper and book as written instructions. Until the contrary is affirmatively shown by the record, we are bound to presume, as we do in this case, that the circuit court gave the

jury instructions in writing, as requested by the appellant.

The appellant's learned counsel have not complained; very earnestly of the law as stated in either the ninth or; tenth instruction. The extract from the " Chicago Legal News," which constituted the ninth instruction, is the same extract precisely, word for word, which we have already set out in this opinion, from the same case as reported in 2 Otto, 516. We have stated in that connection that this extract contained a fair statement of the law on the subject of overvaluation, and we also think that it was applicable to the case made by the evidence.

The tenth instruction was an extract from section 373 of "May on Insurance," and was as follows:

"But an overstatement of the value of the property for insurance upon which application is made, will defeat the policy, whether there be any condition or stipulation in the policy to that effect or not. It is a material fact in that it is of importance that the insured should be interested in the protection of the property. The smaller the amount of the insurance, therefore, the stronger his interest in the protection. The probable loss, in case of the destruction of the property by fire, is the incentive to vigilance in the protection of the whole, as well that which is covered by the policy as that which is not; for whatever threatens the interest of the insurers threatens also the interest of the insured. But the law will not here interest itself in trifling discrepancies and insignificant differences, such as may be readily accounted for by that natural tendency to overestimate which self-interest always engenders. The overvaluation, in order to work a forfeiture of the right of recovery, must be a clear one; so clear that it is obvious at a glance, and can not be accounted for upon the principle that every man is naturally prone to put a favorable estimate upon his own. It is not necessary that the overvaluation be intentional and fraudulent to

have the effect of vitiating the policy. The effect is the same if it be done by mistake, and overvaluation by the agent is imputable to the principal. It is usual to provide that fraudulent overvaluation shall avoid the policy ; and, in point of fact, whether the provision be against fraudulent overvaluation or simply overvaluation, it is of but little moment. For no overvaluation but a gross and clear one, and such as is or must be presumed to be known to be such by the insured, and therefore false and fraudulent, will in either case be held to vitiate the policy ; and such a one will avoid the policy whether provided against or not."

We are clearly of the opinion that the appellant can not justly complain of this tenth instruction. It states the law on the subject of overvaluation more strongly in favor of the insurance company than we think the law will warrant. In our opinion the overvaluation must be knowingly false and fraudulent, or it will not have the effect of vitiating or avoiding the policy ; and so, we think, the learned attorneys of the appellant must have understood the law when they averred, in the appellant's answer, " that, well knowing the premises, the plaintiff, fraudulently intending to cheat and defraud said defendant, wilfully, falsely and fraudulently stated to the agent of the defendant" the overvaluation complained of. The instruction is complained of as misleading ; but it seems to us, that, if the instruction might possibly mislead at all, it would be in the direction and favor, and certainly not to the prejudice, of the appellant, and of such misleading the appellant can not be heard to complain.

The third cause assigned for a new trial was error of the court in admitting the testimony of C. D. Clark, a witness for the appellee, to impeach the testimony of Mrs. Ewing Jarrett and to contradict her deposition. It appears from the record, that, on the trial of this cause, the

appellant put in evidence the deposition of Mrs. Jarrett, apparently taken during the progress of the trial.

On the trial C. D. Clark was a witness for the appellee, testifying as to the merits of the cause. On his cross-examination, apparently, Clark had testified as follows:

" I was at Mr. E. Jarrett's house a week or two after the fire, but I did not then and there say that we were afraid to keep a cow in the barn," (one of the buildings insured), " for fear it would fall down and kill her; did not say this to, or in the presence of, Mrs. Jarrett."

In her deposition, which was evidently taken for the purpose of contradicting the evidence, above set out, of C. D. Clark, Mrs. Jarrett said of Clark: " He said, 'We were afraid to put our cow in the barn, for fear that it would fall down and kill her.' He said, it was not safe to put anything in it. He spoke of the barn referred to in the last question," which was one of the insured buildings.

On her cross-examination by the appellee, Mrs. Jarrett was asked this question: " At the same time and place, during the conversation you have stated, did you not say to Mr. Clark that you intended to do every thing in your power to keep Short from getting his money for those buildings?" Her answer was, " No, I did not."

After the appellant had submitted its evidence, including this deposition, and rested, the appellee recalled his witness, C. D. Clark, and asked him the following question: " Did Mrs. Sarah Jarrett or not, at the time and place mentioned in her deposition, viz., at her house, a week or two after the fire, say to you that she intended to do every thing in her power to keep Mr. Short from getting his money?" To which question the appellant objected, for the reason that the same was " incompetent, immaterial and irrelevant," which objection was overruled, and to this ruling the appellant excepted. The witness then an-

swered: "Yes, she did make that statement, at that time and place."

It was this ruling of the court which was assigned by the appellant as a cause for a new trial. We do not think that the evidence sought for and obtained by Clark's answer to the question propounded to him was open to the appellant's objection thereto. The evidence was neither incompetent, immaterial nor irrelevant. Indeed, the appellant's counsel have apparently abandoned the grounds upon which they objected to Clark's evidence on the trial; for they do not even allude to those grounds in their argument of this cause, in this court. In their briefs here, the counsel base their objections to the evidence of Clark, solely upon the ground that he, as an impeached witness, was not a competent witness to impeach the witness by whom he was impeached. The record fails to show that this objection was made in the circuit court, and therefore we might well say that it could not be made for the first time, in this court. But, in our opinion, the objection made here to the competency of Clark as a witness is not well taken; for the alleged impeachment of Clark, if it fairly existed, would not affect his competency, but merely his credibility. It would not disqualify him as a witness, and it would be for the jury to determine to what extent it should affect his credibility. It seems to us, that the court did not err in admitting the evidence objected to.

The last point made by the appellant's attorneys, in argument, is, that the verdict of the jury was not sustained by sufficient evidence. It is claimed by the counsel, that because the jury found for the appellee in a sum equal to only one-half of his valuation of the insured property, this verdict was "such a concession of overvaluation as renders the policy void. It is clear, we think, from the amount of their verdict, that the jury found there was an overvaluation of the insured property; but it is equally

clear, that the jury must have found this overvaluation to be an honest one, and not knowingly false or fraudulent. By its answer, the appellant specially tendered the issue, that the appellee, well knowing the premises, with the intent to cheat and defraud the appellant, wilfully, falsely and fraudulently made the overvaluation. Upon the issues joined, the jury found for the appellee, thereby finding, in legal effect, that the appellee did not, with the intent to cheat and defraud the appellant, wilfully, falsely and fraudulently make such overvaluation. There is evidence in the record, which tends to sustain this verdict of the jury; and therefore we cannot, under the well settled rule of this court in such a case, disturb the verdict on the mere weight of the evidence.

In conclusion, we hold that the court did not err in overruling the appellant's motion for a new trial.

The judgment is affirmed, at appellant's costs.