Smurr v. The State.

No. 10,162.

## SMURR v. THE STATE.

CRIMINAL LAW.— *Murder.— Variance.— Names Idem Sonans.*—An indictment for murder gave the name of the deceased in one count as "John *Meyer*," and in another as "John *Meyers*." The evidence was that the name was "John *Mayer*."

*Held,* no variance, the names being *idem sonans.*

SAME.—*Statement of Crime.*—On an indictment for murder in the first degree the court informed the jury what the penalty was for that degree, and also for manslaughter, but omitted any statement of the penalty for murder in the second degree, of which last the defendant was found guilty, and the proper punishment assessed.

*Held,* that the omission was harmless.

SAME.—*Intoxication.—Presumption.*—Intoxication is no excuse for crime, if the offender be capable of forming an intelligent design, and in such case, if the charge be otherwise sufficiently proven, he will be presumed to intend the natural consequences of his acts.

SAME.—*Instructions in Writing.*—Where the court is required, pursuant to the statute, to instruct the jury in writing, it is fatal error to read from the printed statutes; but the matter should be copied into a written instruction and read from the copy. ZOLLARS, J., dissenting.

INSTRUCTIONS.—An instruction to the jury faulty only because it does not go far enough is cured by another which supplies the omission.

From the Criminal Court of Allen County.

*S. E. Sinclair, H. C. Hanna, J. Q. Stratton* and *E. Stratton,* for appellant.

*F. T. Hord,* Attorney General, *S. M. Hench* and *W. S. O'Rourke,* for the State.

HAMMOND, J.—The indictment returned by the grand jury against the appellant, in the court below, was in two counts, charging him in each with murder in the first degree. The name of the deceased in the first count was given as John Meyer; in the second as John Meyers; and this was the only difference in the counts. The appellant, on arraignment, entered the plea of "not guilty." There was a trial by jury, resulting in a verdict of guilty of murder in the second degree, and fixing the punishment at imprisonment in the State prison

Smurr v. The State.

during life. Motions for a new trial and in arrest of judgment were severally overruled; proper exceptions were taken, and judgment was pronounced upon the verdict. The errors assigned in this court are as follows:

"1. That the court erred in overruling said appellant's motion for a new trial.

"2. That the court erred in overruling said appellant's motion in arrest of judgment."

The alleged error of the court in overruling appellant's motion in arrest of judgment is not urged in this court. No defect in the indictment has been suggested or pointed out, and none is apparent to us. There was no error in overruling this motion.

In his motion for a new trial the appellant has assigned for error the overruling of his motion to quash each count of the indictment. This presents no question for our consideration. The error of such ruling should have been separately assigned in this court, and not embraced in the motion for a new trial. There are fourteen other causes set out in the motion for a new trial, but all except those discussed by the appellant in his brief will be considered as waived. The 12th, 13th, 14th and 15th of such causes ask for a new trial on the grounds, that the verdict is not sustained by the evidence, that it is contrary to the evidence, and contrary to the law and the evidence. In support of these causes for a new trial it is earnestly and ably insisted by the learned counsel for the appellant that the appellant, in taking the life of the deceased, was acting in the proper defence of a younger brother, who, it is claimed, was at the time of the homicide in imminent peril of life, or danger of great bodily harm, from the deceased. While there is evidence tending to establish this theory, there is evidence also tending to show, and from which the jury might and no doubt did infer, that the appellant and his brother were themselves the aggressors, and that what the deceased did was nothing more than was proper in his own defence, or nothing, at most, that excused the homicide. At

all events, as there is evidence in the record fairly sustaining the verdict, we can not disturb the judgment of the court below in its ruling upon the sufficiency of the evidence.

In further contention that the verdict is not sustained by the evidence, the appellant claims that there is a fatal variance in the name of the deceased, as it occurs in the indictment and as it is shown in the evidence. His name in the indictment, as already stated, was, in the first count, John Meyer; and in the second, John Meyers. The name of the deceased, as given by his widow in her evidence at the trial, was John Mayer, and there was no evidence to the contrary as to the spelling of his name.

It is a well established principle in criminal prosecutions that the name of the injured party must be proved as charged in the indictment. It is not essential, however, that the evidence must show that the name is correctly spelled in the indictment. When substantially the same sound is preserved, the variant orthography will make no difference. The following names in our own reports have been held to be *idem sonans:* "Conn" and "Corn," *Moore* v. *Anderson,* 8 Ind. 18; "Adanson" and "Adamson," *James* v. *State,* 7 Blackf. 325; "Beckwith" and "Beckworth," *Stewart* v. *State,* 4 Blackf. 171; "Geessler" and "Geissler," *Cleaveland* v. *State,* 20 Ind. 444; "McGloflin" and "McLaughlin," *McLaughlin* v. *State,* 52 Ind. 476. Instances are cited by text-writers where the variance in the spelling of names was more incongruous than that in any of the above cases, but where it was held that the names were *idem sonans.* 1 Whart. Crim. Law, section 597; 1 Bishop Crim. Proced., sections 688–9.

In Webster's Unabridged Dictionary, p. 1740, one pronunciation of the name *Mayer* is given as *Mier.* The pronunciation of proper names is often arbitrary. Persons, whose names are spelled the same, frequently pronounce them differently. If the orthography in the indictment and in the evidence indicated a variance in the sound of the name of the deceased, it was, perhaps, a proper question for the jury to

determine from the evidence whether the sound as disclosed in the testimony was the same as that indicated in the indictment, and upon this point the court gave the jury a proper charge. But we are inclined to the opinion that the different spellings, Meyer, Meyers and Mayer, are *idem sonans*, and that the objection made to the verdict on account of the variance insisted upon is not well taken.

Exceptions were taken by the appellant to the giving by the court, of its own motion, of charges from No. 1 to No. 22 inclusive. But no complaint in this court of these charges is made except as to those numbered 18 and 20. It is admitted that charge No. 18 is good as far as it goes, and this admission waives all objections to it. If the charge did not go far enough, it was the appellant's right to tender another covering the law as he understood it. This he did, and the charge thus tendered was given to the jury. In the twentieth instruction the court informed the jury what the penalty was for murder in the first degree and for manslaughter, but omitted to inform them of the penalty for murder in the second degree. This omission is complained of, but it was harmless. The jury in their verdict assessed the proper punishment for murder in the second degree. As stated by the court in this charge, the statute upon the subject was no doubt read to the jury in their argument by counsel for the appellant and appellee, and from this the jury may have received the information that enabled them to affix the proper penalty. The appellant insists that the court erred in modifying charges three, four, six, seven and eight, which he requested to be given. These, except the eighth, relate to the law of self-defence, and we think the modifications made by the court rendered them only more applicable to the evidence. In the modification of the eighth instruction asked by the defendant, the jury were informed that " Voluntary intoxication is no excuse for crime as long as the offender is capable of conceiving an intelligent design; he will be presumed, if the case is otherwise made out beyond a reasonable doubt, to have in-

tended the natural consequences of his own act." This is good law, and was applicable to the case, as there was evidence tending to show that at the time of the homicide the appellant was excited by intoxicating drinks.

At the trial of this case, and before the commencement of the argument to the jury, the appellant requested the court to give all instructions to the jury in writing. After the jury had retired and had been deliberating upon their verdict twenty-four hours, they were, at their instance, returned to the court-room, and they then requested the court to read to them the 2d, 4th, 7th and 8th sections of chapter 7 of Revised Statutes of Indiana, of "An act defining felonies, and prescribing punishment therefor." 2 R. S. 1876, pp. 423, 425 and 426. To this request the appellant at the time objected and excepted, but his objection and exception were disregarded, and the court then read to the jury from the statutes the sections above named, to which the appellant took proper exceptions, and assigned this proceeding of the court as one of his causes for a new trial in his motion therefor.

In the 5th specification of section 103, 2 R. S. 1876, pp. 399 and 400, in relation to criminal pleading and practice, which was in force at the time of the trial, it is provided that after the close of the evidence and argument to the jury, " The court must then charge the jury, which charge, upon the request of the prosecuting attorney, the defendant or his counsel, made at any time before the commencement of the argument, shall be in writing, and the instructions therein contained, numbered and signed by the court." The statute then in force in reference to trials in civil causes was substantially the same. 2 R. S. 1876, p. 167. These provisions of former statutes have been deemed by the Legislature of so much importance that they have been brought forward and incorporated in the civil and criminal codes of 1881—sections 533 and 1823, R. S. 1881. The record shows that the appellant brought himself within the statute, and that he was, therefore, entitled to have

the court put all its charges in writing, numbered and signed by the court. The reason of the statute upon this subject is obvious. If the charge of the court is in writing an exact record of it is preserved, about which there can be no mistake or controversy, and an easy and simple method is secured to the parties of saving their exceptions. Where the instructions are oral, even with the assistance of a short-hand reporter, it is difficult to preserve the precise language of the court, and then, in making corrections for the bill of exceptions, an inadvertence in the change of a sentence, or even a word, may make the instructions as they appear in the record different from what they were as delivered to the jury. For these and perhaps other reasons that might be suggested, this court has uniformly held that the statutes requiring the court to instruct in writing, where the proper request was made, are mandatory, and, when disregarded, the losing party is entitled to a new trial. When the request to instruct in writing is made, the whole charge must be in writing. In such case it is error for the court to give any oral instruction whatever, in extension, explanation or modification of the written charges. It matters not that such oral instruction may be a correct exposition of the law. It is a party's right to have the charge in writing, the instructions numbered and signed by the court, and, if this right is withheld, and the verdict be against him, a new trial must be granted. *Meredith* v. *Crawford*, 34 Ind. 399 ; *Gray* v. *Stivers*, 38 Ind. 197 ; *Hardin* v. *Helton*, 50 Ind. 319 ; *Provines* v. *Heaston*, 67 Ind. 482 ; *Davis* v. *Foster*, 68 Ind. 238.

Where the request to instruct in writing is made, it is not complied with by reading from the Statutes of the State or from other law books. This is not reducing the charge to writing as required by the statute. It is proper, of course, for the court to make extracts, which are law and applicable to the case, from any law book, and to copy the same in its written charge and to read the charge containing such extracts to the jury. The extracts from books given in this way

to the jury become part of the court's written charge; the identity of the charge is secured. But if the court may, in charging the jury, where there is a request to instruct in writing, read from law books, reading a few lines here and a few there, omitting occasionally a word or a sentence not deemed applicable to the case, a party would be put to much and, perhaps, fruitless effort in collecting together the court's charge. The instructions as delivered to the jury would not be in writing, numbered and signed by the court, and the easy method of preserving exceptions to instructions, provided by statute, would be ignored, and the party compelled to follow the court in its readings from books, and to gather up the extracts as best he could and then set them out in a bill of exceptions. Nor can it make any difference that the extracts read from books are simple and easily identified. If reading any extract from a book is recognized as a compliance with the statute to put the charge in writing, the door is thrown open for all the abuses and inconveniences that might follow from such a practice. The law gives the court ample time where the request is made to put its charge in writing, and this is a duty that it can not, in such case, disregard. When the jury trying the appellant came from their deliberations into court and requested the court to read to them certain sections of the statute, this was in effect asking for further instructions. These should have been given by the court, but given in writing, as requested by the appellant, at the proper time. The precise question under discussion was before this court in *Bouorff* v. *Shelton*, 79 Ind. 98. That was a civil action for damages for malicious prosecution, and the point considered and the views of the court there are thus stated by NIBLACK, J., who delivered the opinion of the court:

"At the proper time, the defendant requested the court to give all of its instructions to the jury in writing. After the argument was concluded the court gave several instructions in writing asked for by the plaintiff; also, several written

instructions requested by the defendant. In setting forth the subsequent proceedings, the bill of exceptions recites that 'the court, also, on its own motion, first stated to the jury verbally, and not in writing, that the statute defining malicious prosecutions is as follows—and then read to the jury from 2 Revised Statutes of 1876, p. 465, the 18th section of the act entitled "An act defining misdemeanors and prescribing punishment therefor," approved June 14th, 1852, as amended by the act amending said section, approved March 5th, 1859. The court then gave to the jury the following instructions in writing,' which instructions are copied at length into the bill of exceptions. * * * * This verbal statement, including the reading connected with it, constituted nothing more than an oral instruction. It had none of the peculiar attributes of an instruction in writing. It did not put what the court communicated to the jury upon paper in such a way as to afford the defendant all the opportunities for reserving an exception to which he was entitled. It left what was said by the court in a condition which would have required it to be afterward written down by some one in case either party had desired to bring it into the record. It is well settled that an oral instruction can not be lawfully given when the court has been properly required to give all the instructions in writing."

The reasoning in that case is conclusive of the decision in this. If it was important that the statute be strictly complied with in a civil action for damages the reasoning of the learned judge in that case applies with greater force to the present, where a man's life or liberty was involved in the trial.

The learned counsel for the appellee insist with much force and ability, that this case is like that of Citizens, etc., Ins. Co. v. Short, 62 Ind. 316. But an examination of that case and the present will show that they are clearly distinguishable. In that case, as is shown in the opinion of HOWK, C. J., the court, in its written instruction No. 9, copied certain extracts from the "Chicago Legal News," and from "May

on Insurance." If the court had read these extracts from the paper and work referred to, instead of transcribing them, as it did, into its written instructions, the case would be parallel with the present. As already stated, if the court below had copied the sections of the statute read to the jury into its written charges there would have been no error. But this was not done. It read those sections to the jury, not from any copy transcribed into its written charge, but, as the bill of exceptions states, "from the second volume of the Statutes of the State of Indiana."

For this error the judgment of the court below must be reversed.

The judgment of the court below is reversed, with instructions to grant the appellant a new trial. The warden of the State prison in which the defendant is confined will cause the appellant to be delivered to the jailer of the proper county, to abide the order of the court below.

## DISSENTING OPINION.

ZOLLARS, J.—I am constrained to dissent from so much of the opinion of the majority of the court as bases the reversal of the judgment upon the action of the court below in reading to the jury certain sections of the statute. It is stated in the record that upon the request of the jury they were returned to the court room, and the court read to them the 2d, 4th, 7th and 8th sections of chapter 7 of the Revised Statutes of Indiana, defining felonies and prescribing the punishment therefor. These sections, as so read, are set out in full, and are literal copies of the statute, 2 R. S. 1876, p. 423.

The record contains this further statement: "At the time the jury requested the court to read said sections of the statute to the jury, the defendant, by his counsel, objected to the court reading said sections of the statute to the jury from the second volume of the Revised Statutes, and insisted that said sections should be reduced to writing before being read, and

read in writing, and not from the statute." It will be seen from this that no objection was made to the contents of the sections being read to the jury. It appears, rather, that this was desired by appellant, provided the court would first copy them. The sole objection was to the reading of the sections from the volume of the statutes.

The duty of this court in the disposition of criminal cases on appeal is defined and fixed by section 1891, R. S. 1881, which is an enlargement upon section 160, 2 R. S. 1876, p. 412. This section is as follows: "In the consideration of the questions which are presented upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action of the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant."

While I grant that the reading of the sections from the volume of the statutes was not a full compliance with the law requiring instructions to be reduced to writing, I do not concede that the sections thus read constituted nothing more than an oral instruction. Had the court, instead of reading the sections from the volume of the statute, cut them out and fastened them upon a sheet with other instructions, and read them to the jury, it could not be said, with reason, that the law in relation to the giving of written instructions had not been substantially and sufficiently complied with.

I would not sanction the reading of law magazines, or sections from legal text-books, as the one may be mislaid, and the text of the other change, so that it might be difficult, if not impossible, in some cases, to determine just what was read to the jury. These objections do not apply with the same force to the reading of the sections defining the offence from the statutes of the State. These sections are in the bound volumes of the State laws, and are accessible at all times and at all places in the State, as they are upon the desks and tables of all the courts, if not of all the lawyers, in the State ; and when

the chapter and sections are given, as in this case, there can be no doubt about what was read to the jury; and there can be no difficulty in incorporating it into the bill of exceptions, except the trouble of copying. · From what I have said it must not be understood that I approve of the course of the court below in so reading from the statutes. What I contend for in this case is, that, while the court below committed an error, it is not such an error as justifies us in reversing the judgment. The substantial rights of appellant could not in any way be affected by it. The verdict of the jury would doubtless have been the same, whether the sections were read from the volume or copied by the court and read to them.

There is nothing so dangerous to the rights of a party litigant as improper instructions, and yet this court has held, in a long line of decisions, that a judgment will not be reversed upon an erroneous instruction if the substantial rights of the complaining party have not been affected thereby. This doctrine has been applied in at least two criminal cases that I now remember. *Smith* v. *State*, 28 Ind. 321; *Rollins* v. *State*, 62 Ind. 46.

The last of the above cases was decided with reference to section 160, 2 R. S. 1876, p. 412, and extends that statute, as it seems to me, further than it would be necessary to extend the present statute to uphold the judgment in this case. If the present case is not one to which the statute above set out should be applied I am unable to conceive of a case that would be. I am willing to extend to accused parties every protection of the law, and surround them with every presumption of innocence, but I do not feel like giving my consent that this court shall overturn the verdicts of juries and the judgments of the lower courts upon technicalities, such as I believe the error complained of in this case to be, which do not affect substantial rights.