Stitz *v.* The State.

No. 12,379.

STITZ *v.* THE STATE.

CRIMINAL LAW.—*Arson.*—*Evidence.*—*Impeachment.*—*Motive.*—Under an indictment for arson, where the crime is alleged to have been committed for the purpose of defrauding an insurance company, which had issued a policy of insurance upon the building burned, it is competent for the State to give in evidence a claim made by the defendant for the property destroyed, and to prove that he put a value upon it in excess of its real worth, not for the purpose of impeaching the character of the accused, but as tending to show a motive to commit crime.

SAME.—*Impeachment of Character.*—Character can not be impeached by evidence of specific facts.

SAME.—*Explanation of Motives.*—*Instruction.*—Facts tending to show evil motives are always susceptible of explanation, and where the State, in an arson case, has offered evidence showing an over-valuation of the property burned, the accused is entitled to an instruction, that if the over-valuation was the result of an error of judgment or of a mistake of fact, it was not necessarily evidence of a wicked motive or criminal intent.

SAME.—*Reasonable Doubt.*—*Instruction.*—An instruction that "while each juror must be satisfied of the defendant's guilt beyond a reasonable doubt, to authorize a conviction, such reasonable doubt, unless entertained by all the jurors, does not warrant an acquittal," is erroneous.

From the Jasper Circuit Court.

*S. P. Thompson* and *R. P. DeHart,* for appellant.

*M. H. Walker,* Prosecuting Attorney, and *E. P. Hammond,* for the State.

ELLIOTT, J.—The indictment upon which the appellant was convicted charges him with the crime of arson, and charges, also, that the crime was committed for the purpose of defrauding the Phenix Insurance Company, which had issued a policy of insurance upon the building burned.

The State was permitted to give in evidence a claim made by the appellant for property destroyed by the fire, and to prove that he put a value upon the property beyond its real worth. We regard this evidence as competent. We do not, however, agree with the counsel for the State, that it was competent for the purpose of impeaching the character of the accused; on the contrary, we regard the theory of the counsel

for the State upon this point as radically erroneous. Character can not be impeached by evidence of specific acts. This familiar principle shatters the theory of the State. In proceeding upon this theory counsel were led into serious error in their argument to the jury, and the court followed them to the manifest injury of the appellant.

We put our ruling on the ground that the evidence was competent, as tending to show a motive to commit the crime. If an accused has a policy of insurance on his property, and claims from the insurer more than the property is worth, it supplies some evidence of a wicked motive. If a man should claim, under oath, one thousand dollars for property of no greater value than one hundred dollars, that fact would supply some evidence tending to establish a motive for setting fire to the building in which it was situated. It would, however, be a mere circumstance to be considered in connection with other facts. Of itself, it would not be of great weight, but it would nevertheless be some evidence of a criminating character. The law recognizes the principle that men are impelled to commit crimes from some motive. There are, indeed, few motiveless crimes, and among the motives impelling men to crime is that of gain. In a thoughtful and philosophical treatise it is said: "As there must pre-exist a motive to every voluntary action of a rational being, it is proper to comprise in the class of moral indications such particulars of external relation as are usually observed to operate as inducements to crime," and among the motives that influence human conduct this author classes that of gain. Wills Circ. Ev. 39.

Another author says: "In looking at the motives which instigate human conduct, we ascend to the very origin of crime." Burrill Circ. Ev. 281. At another place this author says: "The motive of gain, in the stricter sense of the term, may be excited by two different classes of objects; first, by something visible and tangible, which the party meditating the crime desires to possess; and, secondly, by some substan-

tial benefit which is expected to accrue as the result of the contemplated act." *Ibid.* 285.

The case of *State* v. *Cohn*, 9 Nev. 179, supplies an illustration of the practical application of these principles. In that case the appellant was charged with arson, and it was held that evidence of over-large insurance upon his goods was competent "to show a possible or probable motive, such motive being a material link in the chain of circumstances." In the course of the opinion in that case it was said : " Now, it is not a natural thing for a man to fire his own premises : presumptively appellant was innocent. What then is the logical and natural course of human thought at such a juncture? Is it not to inquire what motive, if any, existed which could have influenced a sane person to do such an act? Such was the course pursued by the prosecution ; the motive was sought ; and by it claimed to be found in the fact of an undue insurance; not only a perfectly proper proceeding, but indeed the only one open." The same principle is declared in *Commonwealth* v. *Hudson*, 97 Mass. 565, and in *Shepherd* v. *People*, 19 N. Y. 537. In this last case DENIO, J., speaking for the court, said: " The prisoner's house had been burned and he was charged, upon circumstantial evidence, with having set it on fire. *Prima facie* he had no motive for the act, but a strong pecuniary one against it. But if he had a contract of indemnity, and especially if under it he might probably obtain more than the value of the property, the case would be quite different."

Mr. Bishop says: " Evidence that the insurance was for more than the worth of the building is pertinent; also, that the defendant attempted to procure payment of what was thus excessive." 2 Bishop Crim. Proc., section 50. These cases are in harmony with the general rule which that author thus states: " Hence proof of motive is never indispensable to a conviction. But it is always competent against the defendant." 1 Bishop Crim. Proc., section 1107. Wills Circ. Ev. 41; *Goodwin* v. *State*, 96 Ind. 550, see p. 560.

While it is competent to prove facts tending to show an evil motive, yet such facts are always susceptible of explanation. Motive is but a circumstance, and it is always proper to explain the act which is adduced as evidence of a wicked motive. This is true of the present case. If the valuation of the property was made by mistake, or was a mere honest error of opinion, the probatory force of the fact that there was a claim made for a value greater than the actual one would be materially weakened, if not entirely destroyed. It is not uncommon for men to place too great a value on their own property, and an error in doing so is not necessarily a criminating circumstance. *Citizens, etc., Ins. Co.* v. *Short*, 62 Ind. 316. The accused was entitled to an instruction that if the over-valuation of the property was the result of an error of judgment or of a mistake of fact, it was not necessarily evidence of a wicked·motive or criminal intent. Our opinion is that the court erred in refusing the instruction asked by the appellant upon this point.

The court gave to the jury this instruction: "While each juror must be satisfied of the defendant's guilt beyond a reasonable doubt, to authorize a conviction, such reasonable doubt, unless entertained by all the jurors, does not warrant an acquittal." This instruction is palpably erroneous. There can be no conviction of a crime unless all the jurors are satisfied beyond a reasonable doubt of the guilt of the accused. The law upon this point is firmly settled. The instruction before us in effect reverses this rule, for it informs the jury that "such reasonable doubt, unless entertained by all the jurors, does not warrant an acquittal." This must have induced the jurors to think that unless all concurred in entertaining a reasonable doubt, the verdict should be against the defendant. This is in direct opposition to the rule declared by our decisions. *Castle* v. *State*, 75 Ind. 146; *Clem* v. *State*, 42 Ind. 420 (13 Am. R. 369). This instruction is essentially different from the one passed upon in *Fassinow* v. *State*, 89 Ind. 235.

A reasonable doubt entertained by some of the members of the jury may not compel an acquittal, but it may so strongly prevail, and among so many, as to warrant others in yielding their opinions and joining in a verdict of acquittal. At all events, an instruction which indicates, as the one under immediate mention does, that individual jurors should not acquit, unless all the members of the jury entertain doubts of the defendant's guilt, is erroneous. It may possibly be that in a case where the evidence satisfactorily shows the guilt of the accused, there should be no reversal for such an error as that committed in giving the instruction; but, however this may be in other cases, in such a case as this, where the evidence is far from satisfactory, we can not disregard the error committed in giving the instruction under examination.

There are other instructions given which we deem erroneous, but we do not think it necessary to discuss them, for the judgment must be reversed for the errors pointed out.

Judgment reversed, with instructions to issue the proper order for the return of the appellant.

Filed Dec. 31, 1885.