[No. 20825. Department One. January 20, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. MARTIN E. SNYDER, *Appellant*.[1]

[1] ARSON (9)—EVIDENCE—SUFFICIENCY. A conviction of arson is warranted by the evidence, where it appears that the building was greatly over-insured, that on the night of the fire the owner was present in exclusive control of unoccupied parts of the building, including two separate basements, in which two fires had started simultaneously, evidently by human agency.

[2] INDICTMENT AND INFORMATION (72)—DUPLICITY—CHARGING OR JOINING DIFFERENT COUNTS. It is proper to join two counts in arson alleging the setting of fires on different dates, without stating any relation between them, in view of Rem. 1927 Sup., § 2059, authorizing the charging of two or more acts of the same class of crimes, in separate counts in one information.

[3] ARSON (8)—MOTIVE—INSTRUCTIONS. In a prosecution for arson in the burning of the accused's insured building, the accused is entitled to an instruction that the fact of over-insurance would not warrant a finding of motive unless accused knew that the insurance in force constituted over-insurance.

[4] CRIMINAL LAW (290)—INSTRUCTIONS—CREDIBILITY OF TESTIMONY OF ACCUSED. In a criminal case, having once instructed the jury as to considering the interest of the accused in weighing his testimony, it should not be emphasized by repetition (MACKINTOSH, C. J., dissenting).

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered March 17, 1927, upon a trial and conviction of arson. Reversed.

*Williams & Cornelius,* for appellant.

*Joseph H. Johnston,* for respondent.

PARKER, J.—The defendant, Martin E. Snyder and son, George M. Snyder, were jointly charged, by information filed in the superior court for Lincoln county, with the crime of arson. Count 1 of the information charged them with setting on fire a building,

[1]Reported in 263 Pac. 180.

known as the Bowie Block, in Reardan, in that county, on July 23, 1926. Count 2 of the information charged them with setting on fire the same building on August 3, 1926.

After the filing and overruling of demurrers of each of the defendants to the information, the case proceeded to trial upon the merits in the superior court sitting with a jury, resulting in the defendant George M. Snyder being by the court discharged for want of evidence sufficient to submit to the jury the question of his guilt of either charge; a verdict finding the defendant Martin E. Snyder not guilty of arson, charged in count 2 as being committed on August 3, 1926; and a verdict finding the defendant Martin E. Snyder guilty of arson in the second degree only, charged in count 1 as being committed on July 23, 1926. Final judgment of the superior court was rendered against the defendant Martin E. Snyder upon this last mentioned verdict, sentencing him to the penitentiary for a period of from two to five years, from which judgment he has appealed to this court.

The main controlling facts, as we think the jury were warranted in viewing them from the evidence, and as they evidently did view them, may be summarized as follows: Reardan, some twenty-five miles west of Spokane, is a small town in Lincoln county through which runs east and west the Sunset highway, constituting the principal business street of the town. Lake street runs north and south, intersecting the highway at what may be regarded as the business center of the town.

The so-called Bowie Block, the burned building here in question, was a two-story brick building fronting east seventy feet on Lake street and extending west one hundred feet, its north wall being parallel with, and fifty feet south of, the highway. The building

contained three storerooms on the main floor, of about
equal size, fronting on Lake street and extending west
the entire length of the building. Under the rear of
the building was a basement extending north and south
the entire width of the building. This basement was
partitioned off with solid board partitions so that it
became three basements, each the width of and under
the rear of the respective storerooms. There was no
door or other direct communication from any one of
these basements to any other. Each was accessible
only by stairway from the storeroom above it. Each
had small windows opening to the rear of the building,
under what was evidently a loading and unloading
platform across the rear and outside of the building
to facilitate taking goods in and out of the store-
rooms. This platform was some three feet above the
ground. The basements had no access from the out-
side at the rear, save the small windows, apparently
sometimes used for putting in fuel or similar material.
There was no door or other direct communication from
one to the other of the storerooms. Each storeroom
and the basement under its rear was, for all practical
uses, a separate building.

There was a stairway leading up inside the building
from the Lake street front to the second floor, making
the second floor accessible directly from the sidewalk
outside the building, but not accessible directly from
the inside of the main floor. There was also an outside
stairway, at the rear of the building, leading up to a
platform even with the second floor, and a door open-
ing onto that platform from a dance hall. The second
floor was not directly accessible from the first floor
inside the building, but only by one or the other of
these two stairways. The second floor was partitioned
off into some small rooms on the Lake street front and
two public halls extending to the rear of the building.

The north storeroom was rented as a drugstore at thirty-five dollars per month; the other two store-rooms were vacant. The upstairs halls were occasionally rented. The total gross income of the building at the time in question, and for a long time prior thereto, evidently did not exceed fifty dollars per month. The building was not at all well located in the town for occupancy for business purposes. Business was moving away from that location.

There was considerable testimony introduced touching the value of the building. This was largely opinion evidence as to its market or sale value, though apparently it had almost no market value by reason of lack of sales of real property in the town. There was also considerable evidence touching the earning power of the building, past, present and prospective. All of this evidence tended to show that the building was not likely to have in the future any greater earning power than it possessed at the time it was burned, and that its sale or market value was, as the jury might believe, in no event to exceed $10,000 or $15,000. Physically, it was a substantial and lasting brick building which would cost more than $25,000 to construct.

Appellant has lived in Spokane for a period of some twenty-five years. In June, 1926, appellant traded land he owned in Idaho for the building and ground. He claims that the trade was an exchange of properties, each of the respective value of approximately $28,000, treating each as unencumbered. Appellant was then indebted in a considerable amount, evidenced by judgments standing against him in this state. Upon consummation of the exchange, appellant caused the deed conveying the building to be made in the name of his son, George M. Snyder. This, he claims, was because of moneys loaned by George to him during a period of several prior years. George was then ap-

proximately twenty-five years old and had accumulated money only by wages and salary by going to sea, serving in later years as a radio operator, earning from $100 to $175 per month. George claims that the money so loaned to appellant, with interest, amounted, at the time of so acquiring the building, to approximately $16,000. At that time, and since then, it has been subject to a mortgage indebtedness of $10,000.

The insurance called for by the mortgages having expired at that time, appellant procured a $10,000 policy of insurance on the building, payable to the mortgagees as their interest might appear, turning the policy over to the mortgagees, and at the same time procured another $10,000 policy of insurance on the building; both policies being in the name of the son George M. Snyder as owner of the property. Thereafter, about July 19, 1926, appellant applied for another $5,000 policy of insurance on the building in the name of George M. Snyder as owner. There is some doubt as to whether or not this policy was legally effectively executed, but the jury might believe that appellant so regarded it. The main consideration in this connection is that appellant had procured, prior to the first fire, as the jury believed that appellant believed, insurance upon the building to the amount of $25,000. These policies were all for a one year term, though they could have been acquired for a three year term for only double the amount of premium for the year term. The acquisition of the building, the procuring of all this insurance, and the entire care and management of the building were at all times actually in the hands of appellant, up to the time of its complete destruction by the second fire, occurring August 3, 1926.

A few days prior to July 23, 1926, appellant went from his home in Spokane to Reardan, as he claims,

to clean up and make some minor repairs in the two unoccupied storerooms. He slept one or two nights at a small hotel on the north side of the highway directly north of the rear of the building. Claiming to be much disturbed by the noise during the night by the passing of numerous automobiles along the Sunset highway to and from Spokane, he gave up his room in the hotel and slept thereafter in the dance hall on the second floor of the building, making his bed on benches drawn together, using some old burlap material, which was there, for a bed and his coat for a pillow, claiming that he did not undress other than to take off his coat and shoes. The weather was warm. During the daytime, he spent most of his time in the building, doing some cleaning and making some repairs in the way of carpentering, kalsomining and painting. He evidently had keys by which he could gain access to the two unoccupied storerooms and through them to their respective basements, and also to the second floor. The evidence is silent as to any one else having access to the unoccupied storerooms, or basements, or second floor.

Prior to the first fire, there was, in each of the basements under each of the two unoccupied storerooms, a considerable quantity of rubbish, consisting of old barrels and boxes, some cast-off pieces of leather from a harness business that had been in one of the storerooms, an oil can or two, and an oil tank of some size.

During the morning of July 23, 1926, the town was awakened by a fire alarm. The proprietor of the little hotel where appellant had slept a few nights before, which, as we have seen, was directly north of the rear of the building across the Sunset highway, and probable about two hundred feet away, seemed to be the first to arrive at the building in response to the alarm.

He, knowing that appellant was sleeping in the building upstairs, immediately ascended the rear stairs of the building to the second floor, and, gaining access through the door there, tried to get into communication with appellant. At that time, the fire was burning in the unoccupied basements, and smoke had penetrated the building to the extent that he deemed it unwise to pursue his mission there any further; so he hurried back down the rear stairs and around to the front stairs, with the thought of ascending the front stairs and reaching appellant in that way, or assuring himself that appellant had gotten out of the building. On coming to the foot of the front stairway, he found appellant sitting down on, or possibly very near, the lower step. Appellant appeared to be fully dressed, including coat and shoes, though the hotel proprietor was not certain that he saw appellant's shoes laced, appellant himself claiming that they were not laced and that he had hurriedly gotten up from his bed on the benches in the hall and made his way through the smoke downstairs and there sat down, considerably overcome by the smoke. The hotel proprietor testified that appellant seemed to be all right, though he wanted a drink.

About this time the volunteer fire department arrived, and after some considerable effort directed to the seat of the fire, which was in both basements, it was entirely extinguished; the burning being confined to the basement; that is, to the rubbish, partitions and the under portion of the main floor.

There was evidence tending to show, and warranting the jury in believing, that the fire originated simultaneously, separately, in each of these basements, and, before it got under any very great headway, burned separately; though ultimately it practically destroyed the partition between the two unoccupied basements.

There was evidence tending to show that when the firemen, by the use of the hose, would get the fire in one basement apparently extinguished and then turn their attention to the other basement, the fire would again break out in the first one, apparently without any cause other than, as the fire experts testified, the seeming probability of the presence of some volatile oil in each of the basements. In this connection, the theory of the prosecution seemed to be that the origin of the two separate fires simultaneously pointed to their incendiary origin, rather than to any spontaneous combustion.

On August 3, 1926, at the hour of about four o'clock in the morning, the town was again startled by a fire alarm, the fire being in this same building, it having gained great headway before it was discovered, and its origin being a matter of conjecture, other than the possible motive of appellant and his son in desiring the building to be burned. This fire very shortly entirely consumed the building. As to the responsibility for this fire, we need not here make further inquiry, since both appellant and his son were acquitted of criminal connection therewith.

[1] It is strenuously contended, in behalf of appellant, that the evidence is not sufficient to support the verdict of the jury finding appellant guilty of arson in the second degree in setting the fire of July 23rd, charged in count 1 of the information. We have painstakingly read all of the evidence as it is elaborately, and apparently fairly, abstracted by counsel for appellant. The argument is that the fire is not shown to have been of incendiary origin, or that appellant was criminally connected with its origin. The evidence, as we have seen, is practically wholly circumstantial, in all its bearings upon both of these questions. We have, because of this nature of the evidence,

reviewed it in possibly seemingly unnecessary detail here and noticed some seemingly somewhat insignificant facts, viewed apart from the others. Considered as a whole, we cannot say, as a matter of law, that the evidence is not sufficient to support the verdict and judgment, both as to the incendiary nature of the fire and appellant's criminal liability therefor.

We have, as the jury might view the case: (1) the starting of the fire simultaneously in separate basement rooms; (2) the starting of the fire under such circumstances that it seems little short of certain that such fire would not have started except by human design or accident, the latter of which is highly improbable under the circumstances; (3) appellant's opportunity to start the fire, in view of his seemingly exclusive control of the unoccupied portions of the building, including the two unoccupied basements; (4) the circumstances under which appellant was found at the foot of the front stairs of the building immediately following the starting of the fire; and (5) appellant's probable motive, in that he or his son, or both, would profit by the burning of the building in the collection of insurance in excess of the value of the building, procured by appellant. We are not saying that we would, were we the triers of the facts, have found against appellant beyond reasonable doubt upon any, or all, of these questions. Upon this branch of the case, we decide only that we do not see our way clear to decide, as a matter of law, that the jury were not warranted in thus viewing the evidence and finding beyond reasonable doubt appellant to be guilty of arson in the setting of the fire. This is as far as we are permitted to go in our present inquiry.

[2] It is contended that the trial court erred in overruling appellant's demurrer to the information, in that it charges the commission of two unrelated

crimes; that is, the setting of the fire of July 23d and the setting of the fire of August 3d, without alleging any relation between them. It is plain, under ch. 109, Laws of 1925 (Ex. Sess.), p. 168; Rem. 1927 Sup., § 2059, permitting the charging of "two or more acts or transactions of the same class of crimes or offenses" in separate counts of one information or indictment, and our recent decision in *State v. Brunn,* 145 Wash. 435, 260 Pac. 990, that the information in this case charging the setting of the fires of July 23d and August 3d by the same defendants in separate counts in one information is not subject to demurrer.

Whether or not appellant would have been entitled to have been awarded by the trial court separate trials upon these two charges would seem to be a matter of discretion resting with the trial court, which, so far as can be seen from the record before us, that court was not asked to exercise. However, appellant's right to separate trials upon the two counts seems to be a matter of no further moment in this case since appellant was acquitted of setting the fire of August 3d, and, of course, cannot be again tried under count 2 of the information charging him with setting that fire; and since we must grant him a new trial because of error to be now noticed.

[3] Counsel for appellant requested the trial court to give to the jury, among other instructions, the following:

"(17) I instruct you that, if you should find that the property destroyed was overinsured, that this fact would not permit you to find that Martin E. Snyder had a motive for burning the building, unless it should be further established beyond a reasonable doubt that said Martin E. Snyder knew that the amount of insurance in force at such time was such amount as would constitute overinsurance."

This instruction was not given, nor any other of similar import. We think appellant was entitled to have the jury so instructed. The theory of the prosecution is, and has been from the beginning, that appellant's motive, which might have prompted him to burn the building, consisted of his or his son's, or both of their, profit to arise from the procuring and probable collection of insurance for the loss of the building, in an amount exceeding its value. There is no evidence in this record in the least suggesting any other possible motive on the part of appellant to burn the building. In *Stitz v. State,* 104 Ind. 359, 4 N. E. 145, we find a learned discussion touching the procuring and probable collection of overinsurance as a motive for the burning of a building, the defendant being accused of arson in the burning of the building. Holding that the defendant was entitled to have the jury instructed, in substance, as here requested, Judge Elliott, speaking for the court in that case, said:

"While it is competent to prove facts tending to show an evil motive, yet such facts are always susceptible of explanation. Motive is but a circumstance, and it is always proper to explain the act which is adduced as evidence of a wicked motive. This is true of the present case. If the valuation of the property was made by mistake, or was a mere honest error of opinion, the probatory force of the fact that there was a claim made for a value greater than the actual one would be materially weakened, if not entirely destroyed. It is not uncommon for men to place too great a value on their own property, and an error in doing so is not necessarily a criminating circumstance. *Citizens', etc., Ins. Co. v. Short,* 62 Ind. 316. The accused was entitled to an instruction that if the overvaluation of the property was the result of an error of judgment, or of a mistake of fact, it was not necessarily evidence of a wicked motive or criminal intent. Our opinion is that the court erred in refusing the instruction asked by the appellant upon this point."

The evidence rather strongly tends to show that the building could not be constructed for less than twenty-five or thirty thousand dollars. It is a brick building, of very substantial and lasting character. This being a criminal case, the question of the value of the building for insurance purposes becomes a question of appellant's honest opinion of such value, and he was entitled to have the jury so instructed, as bearing upon the question of his possible motive for its destruction. The failure of the trial court to give this requested instruction, we think, entitles appellant to a new trial.

[4] The trial court instructed the jury in general terms that they were the judges of the credibility of witnesses, and that

"  . . . in weighing the testimony of a witness you have a right to consider . . . the interest, if any, you may believe a witness feels in the result of the trial . . ."

Later, the court instructed the jury as follows:

"The defendant Martin E. Snyder having taken the witness stand in his own behalf, you should apply the same rules of weighing and considering his testimony as you would that of any other witness and in weighing and considering his testimony you may further consider the interest he may have in the case and the result of your verdict."

It is contended in behalf of appellant that the concluding words of this instruction constitute error to his prejudice, in that it unduly emphasized the thought of his interest in the result of the case, which thought had already been embodied in the court's prior instruction upon that subject relating to witnesses generally. We probably would not, for this alone, reverse the judgment rendered against appellant, but we deem it proper to, at least, here observe that the concluding language of this instruction complained of was mani-

festly unnecessary and in a considerable measure unwarranted in this case. We think this observation is sufficient, touching this claim of error, in view of our awarding a new trial because of the error above noticed.

We do not find any other claim of error likely to arise in a new trial of appellant upon the charge laid against him in count 1 of the information; that is, for the setting of the fire of July 23, 1926, that being the only charge now against him, since he was acquitted of the charge laid against him in count 2 of the information; that is, the setting of the fire of August 3, 1926.

The judgment is reversed, and appellant is awarded a new trial. The case is remanded to the superior court for further proceedings in harmony with the views herein expressed.

TOLMAN, MITCHELL, and FRENCH, JJ., concur.

MACKINTOSH, C. J. (dissenting in part)—I cannot agree that the instruction relating to interest is improper in any degree.