[No. 24140.   Department Two.   December 28, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES B. BERGMAN, *Appellant*.[1]

*S. Edelstein*, for appellant.

*Chas. W. Greenough* and *Frank Funkhouser*, for respondent.

MAIN, J.—The defendant was by information charged with the crime of arson in the second degree. The trial resulted in a verdict of guilty as charged, and the jury recommended "leniency by this court." Motion for new trial being made and overruled, judgment and sentence were entered committing the defendant to the state penitentiary for a term not less than six months and not more than ten years. From the judgment and sentence, the defendant appeals.

The facts essential to be stated are these: The appellant was a furrier by occupation, and for six years prior to January 6, 1932, had occupied a storeroom at

[1]Reported in 17 P. (2d) 604.

West 722 Riverside avenue, in the city of Spokane, in which he sold, stored and repaired fur coats and other similar articles. The storeroom proper was on the street floor, under which there was a basement which was used for storage purposes. The appellant had been afflicted with asthma for a number of years, and smoked Page asthma cigarettes to relieve him from that ailment. On the night of January 6th, at about one o'clock a. m., a fire occurred in the store, which started in the basement. This fire, according to the testimony of the appellant, was of accidental origin, and, as to the manner in which it started, he testified substantially as follows:

For sometime prior to the fire, he had been ill, suffering from asthma, and would have to remain in bed for a considerable period of time. To relieve himself of the effects of this disease, he used, at different times, hypodermic injections of adrenolin and smoked Page asthma cigarettes, varying the treatment to suit his convenience with whatever he thought might bring the speediest relief. For three or four days prior to the fire, he remained at home, suffering from asthma, and would not go down to the storeroom until four o'clock in the afternoon. He would then work until dinner time, go to his place of residence, which was six or eight miles out of the city of Spokane on the road known as the Appleway, east of the city, and lie down and rest until about nine o'clock in the evening. He then would go to his place of business and prepare work for his employes for the following day, sort out the cleaning to be done, attend to his correspondence, and work on the inventory which he was then taking.

On the night of the fire, the appellant drove down to his place of business in his automobile. Being unable to find a place to park it near the front of the store, the car was parked on a street about a block and a half

therefrom. He then went to the store, completed the inventory in the storage room, cleaned a fur garment belonging to one of the customers, had taken out work to be done by the workmen upstairs, and had brought down some garments that had been completely repaired to hang them in the fur storage room in the basement. Being bothered with asthma, he lighted and was smoking an asthma cigarette. When he went downstairs, he stumbled across a jug which had been used for storing gasoline for cleaning purposes, and was kept in the storeroom. He stooped down to pick up the jug, the lighted cigarette ignited the fumes of the gasoline, causing a flare of fire which burned his clothing, his hands and face, hair, eyebrows and eyelashes. He rushed out of the basement, crashed through the glass door in the hallway next to the office and drove his automobile to his place of residence. Shortly after he went home, he received a telephone call with reference to the fire and went downtown.

The theory of the appellant is that, in taking the garments to the storage room, he accidentally upset the jug, which fell on the floor and caused the gasoline to leak out. The cover of the gasoline container was found after the fire on a shelf on the west wall of the main part of the basement, where the appellant says he placed it when he removed the cover to take the jug over to the work table to sprinkle shavings with gasoline, which were used to remove grease spots from furs.

The theory of the prosecution was, and is, that the appellant was greatly overinsured, was badly in debt for merchandise, labor and rent, and that he set fire to the premises in order to collect the insurance.

There was, at the time of the fire, insurance upon the stock of furs, including those of customers which had been left for repair or storage, and the furniture and

fixtures, in the sum of thirty-two thousand dollars. Upon the trial, the state offered evidence which tended to show that the total value of the stock at the time of the fire, including customers' garments, was approximately twelve thousand dollars, which did not include the furniture and fixtures. The evidence offered by the appellant tended to show that the total value of the assets in the basement storeroom and in the main storeroom on the street floor belonging to him and to customers, for which he was financially responsible, was $48,369.75.

Upon the appeal, the appellant presents but one question, and that is, whether the trial court erred to his prejudice in refusing to give an instruction to the effect that, if the jury found the property was over-insured, this fact would not permit them to find the appellant had a motive for setting the fire, unless it should be further established, beyond a reasonable doubt, that the appellant knew that the amount of insurance in force was such an amount as would constitute overinsurance.

Upon the question of motive, the court gave an instruction to the effect that the jurors must look over the evidence for a motive as to why the appellant would commit the crime of arson with which he was charged, and if the evidence, carefully considered, disclosed no motive, that the jury could look upon this as a circumstance indicating his innocence. The appellant relies for reversal in the refusal of the court to give the requested instruction, upon the case of *State v. Snyder,* 146 Wash. 391, 263 Pac. 180, where a like instruction had been requested and refused, and it was held error not to have given it.

The respondent takes the position that that case is not controlling in the one now before us, because of the difference in the facts of the two cases. In the *Snyder*

case, a brick building in the town of Reardan, in Lincoln county, was burned. In that case, there was no dispute in the evidence as to the sale or market value of the building or of its replacement value, and the evidence as to whether the defendant, who was convicted and appealed, had set fire to the building, was entirely circumstantial. The theory of the prosecution was that the building had been burned for the profit that would arise from procuring a collection of the insurance for the loss in an amount exceeding its value. It was there said:

"There is no evidence in this record in the least suggesting any other possible motive on the part of appellant to burn the building."

In the case now before us, the evidence as to the value of the assets was in dispute. The appellant, in his testimony, described in detail how the fire started, as appears from the facts above stated, and from others that appear in the record. The question in this case is not whether there was circumstantial evidence sufficient to sustain the guilt of the accused, but whether the fire which occurred was accidental or intentional. Motive is not an element of the crime of arson in the second degree (Rem. Comp. Stat., § 2573), but where the evidence as to whether the accused in fact set the fire is in dispute, the question of motive becomes an important consideration in the deliberations of the jury to determine this fact. Where the evidence shows the manner of starting the fire, as it does in this case, the question of motive, while material, is not of so great importance as where the evidence is circumstantial. In the verdict, as above pointed out, the jury recommended leniency, which would indicate that they did not believe that the appellant set the fire for the purpose of profiting by the overinsurance, if there was overinsurance, but that the motive which prompted

him was that of obtaining money that he might satisfy his pressing creditors.

In the instruction given, the jurors' attention was expressly called to the question of motive, and they were told that, if the evidence did not disclose a motive, this would be a circumstance indicating the innocence of the appellant. In view of the differences in the facts of this case from that of the *Snyder* case, and in view of the further fact that an instruction on motive was given, we are of the view that the refusal to give the requested instruction was not prejudicial error. To hold in this case that it was error not to give the requested instruction for which a new trial should be ordered, would, in effect, broaden the rule of the *Snyder* case, and this we are not inclined to do.

The judgment will be affirmed.

STEINERT and BEALS, JJ., concur.

TOLMAN, C. J., concurs in the result.