[No. 35829. Department Two. December 3, 1964.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES D. LONG et al., *Appellants.**

*Reported in 396 P. (2d) 990.

*Robert D. Dellwo,* for appellants.

*George A. Kain* and *Donald C. Brockett,* for respondent.

DONWORTH, J.—The three appellants named in the caption were convicted September 13, 1960, on each of two counts charging them with the armed robbery of two motels in Spokane, at approximately 2 a.m., July 5, 1960. Their motion for a new trial was heard and denied. Each was sentenced to a maximum of 20 years in the state penitentiary, the sentences to be served consecutively. They appealed to this court from their respective judgments and sentences.

The delay in the hearing in this court on the merits of their assignments of error is due to the intervening review

in this court and in the Supreme Court of the United States of the trial court's denial of their application for a free statement of facts for use in prosecuting their appeal in forma pauperis.

In *State v. Long,* 58 Wn. (2d) 830, 365 P. (2d) 31 (1961), this court affirmed the trial court's order denying their application for the reason that their assignments of error were frivolous. The Supreme Court granted their petition for a writ of certiorari and, after a hearing on the merits, reversed this court's judgment and remanded the cause for further proceedings. The Supreme Court's decision was delivered by a vote of five to four, two opinions being written. See *Draper v. Washington,* 372 U. S. 487, 9 L. Ed. (2d) 899, 83 S. Ct. 774 (1963).

In accordance with the mandate of the Supreme Court, appellants have been furnished with a full statement of facts and the case is now before us on appeal upon the merits.

Since the substance of the state's evidence is fully set forth in our previous decision and in the majority and minority opinions of the Supreme Court, we do not deem it necessary to include in this opinion a narrative statement thereof.[1] Appellants did not present any evidence at their trial.

It should be noted that on this appeal appellants are represented by counsel other than their trial counsel.

We now turn to a consideration of appellants' eight assignments of error, the first of which reads as follows:

"Misconduct and prejudicial, reversible error committed by the deputy prosecutor in his opening and closing arguments in which he repeatedly referred to the alleged facts of the case in narrative form as being established facts without explaining that these were only allegations which the state hoped to establish or had established by the evidence."

[1]See the trial court's findings of fact on appellants' motion for a free statement of facts which is quoted in full in the appendix to Mr. Justice White's dissenting opinion in *Draper v. Washington, supra.*

Appellants, in their brief, quote from the deputy prosecutor's opening statement to the jury and complain that he went beyond the bounds of propriety in expressing his own opinion as to their guilt. They cite and particularly rely upon *State v. Case,* 49 Wn. (2d) 66, 298 P. (2d) 500 (1956) (in which the defendant was charged with carnal knowledge of his daughter), where the deputy prosecutor expressly stated in his closing argument to the jury that he doubted in his own mind that anyone had any question in his mind about the guilt or innocence of the defendant, and expressly stated, at p. 68:

" ' . . . I mean, that is my opinion about what this evidence shows and how clearly this evidence indicates that this girl has been violated. . . . ' "

This court commented on this language, at p. 68:

"If presented as a summation of the evidence, such language, prefaced with at least an implied 'The evidence establishes that,' would be excused if not approved. *State v. Brown* (1949), 35 Wn. (2d) 379, 213 P. (2d) 305, and cases therein cited. But that is not the situation here. We cannot interpret the quoted statement, taken in context, as anything other than an attempt to impress upon the jury the deputy prosecuting attorney's personal belief in the defendant's guilt. As such, it was not only unethical but extremely prejudicial."

After referring to other similar misconduct of the deputy prosecutor, we said, at p. 73:

"We are satisfied that the cumulative effect of the deputy prosecuting attorney's repeated improprieties in argument, together with his branding of the defendant's character witnesses as 'his entire herd,' constitutes such flagrant misconduct that no instruction or series of instructions to disregard what he had said could have cured the prejudicial error.

" . . .

"Lest this case be cited as authority for the proposition that a breach of one of the canons of ethics by a prosecuting attorney or his deputy warrants a new trial, we hasten to point out that such a breach is not necessarily a ground for reversal of a judgment and may not even constitute an error in law (as distinguished from a breach of ethics). However, such a breach can, under certain circumstances,

constitute prejudicial error preventing a fair trial. *Ryan v. Ryan* (1956), 48 Wn. (2d) 593, 600, 295 P. (2d) 1111."

Accordingly, the defendant in that case was granted a new trial.

In the present case, the deputy prosecutor began his opening statement as follows:

"After we have probably taxed your patience for some hours this morning, this afternoon you have been selected to be the judges of the facts in this case, and we are now in the opening moments of it, and I have an opportunity to make what is known as an opening statement.

"The purpose of that is simply to give those of you who have little or no knowledge of this case, the general facts of the case, to outline what type of testimony you will hear, and what testimony will be introduced by the State in support of the two counts of the information, and to enable you to get a general idea of this testimony, so that it will fit in place for you a little better as it is developed here."

He then described the substance of the two counts of robbery charged in the information and followed that by a description of the manner in which these crimes were committed (which takes up 13 pages of the statement of facts) and concluded by saying:

"Now, ladies and gentlemen of the jury, I think, in substance, that is our case. I have tried to give you a birdseye view of the evidence so that the testimony will fall in a recognizable pattern, and I think, in substance, that is the nature of the case, and the type of evidence that will be introduced here. Thank you."

Appellants' trial counsel interposed no objection to any part of the opening statement of the deputy prosecutor. We have read it in its entirety and cannot conceive of any possibility of the jury's being misled as to the purpose of the opening statement. In fact, the first and last paragraphs thereof are sufficiently definite to show to the jury that the deputy prosecutor was outlining what the state expected to prove by the several witnesses it intended to call. Read as a whole, it could only be reasonably interpreted in that light. We do not find any such expressions

of personal opinion of guilt on the part of the deputy prosecutor as were present in *State v. Case, supra.*

(The reference to one Robert Jennings, alleged to be a fourth participant in the robberies, who later testified for the state, will be discussed later in this opinion.)

We are of the opinion that the deputy prosecutor acted in good faith in making his opening statement to the jury. This is all that is required in this situation.

The distinction between the expression of an individual opinion of guilt (as in *State v. Case, supra*) and an opinion based on testimony (either intended to be introduced or which has already been introduced by the state) is pointed out in *State v. LaPorte,* 58 Wn. (2d) 816, 365 P. (2d) 24 (1961), where we said:

"There is a distinction between the *individual* opinion of the prosecuting attorney (discussed at length in *State v. Case,* 49 Wn. (2d) 66, 298 P. (2d) 500 (1956)) and 'an opinion based upon or deduced from the testimony in the case.' *State v. Armstrong,* 37 Wash. 51, 55, 79 Pac. 490 (1905).

"When read in context, the quoted statements fall into the second category. Any prejudice resulting from them, however, was removed by the court's instruction that they be disregarded.

"Defendant's counsel made no objections to three statements of the deputy prosecutor to which error is now assigned. Conceding *arguendo* that they were erroneous, the exception to the rule is not applicable, for, when read in context, the statements were not so flagrant that an instruction could not have cured the error. See *State v. Case, supra.*"

With respect to the part of appellants' first assignment of error relating to the deputy prosecutors' closing arguments to the jury and the prejudicial effect thereof, it seems sufficient to say that there was no basis for appellants' claim of reversible error. Two deputy prosecutors addressed the jury, including the deputy who had made the opening statement for the state. They expressed no personal opinions as to the guilt of appellants. One of them gave a narrative resume of the state's evidence, and

within reasonable latitude expressed permissible argumentative deductions based thereon. The other answered the arguments of appellants' trial counsel. There was no reversible error in the closing arguments on behalf of the state. See *State v. Brown,* 35 Wn. (2d) 379, 213 P. (2d) 305 (1949), and cases cited.

■ Furthermore, at the close of the opening statement, and again after the close of all the testimony, the court instructed the jury that statements made by the attorneys during arguments are not to be considered by the jury as evidence. The jury is presumed to have followed the court's instructions. *State v. Kelsey,* 46 Wn. (2d) 617, 283 P. (2d) 982 (1955).

■ Contrary to appellants' contention that the absence of an objection by their counsel during the prosecutors' addresses to the jury is immaterial in this case, we are not here confronted with a situation where the prejudicial effect of the acts of the state's attorney was so flagrant that no instruction by the court could have cured it. *State v. Reeder,* 46 Wn. (2d) 888, 285 P. (2d) 884 (1955), cited by appellants is not apposite.

For the foregoing reasons, we find no merit in appellants' first assignment of error.

Appellants' second and third assignments of error concern the state's witness Robert Jennings, who testified at length as to his own participation in the two robberies as well as the participation of each of the appellants therein. His testimony, on both direct and cross examinations is contained in 37 pages of the statement of facts. In 1951, he had shot a state patrolman, for which he had received a life sentence in the penitentiary. He was paroled in 1958.

About 2 months prior to the trial of appellants, Jennings had pleaded guilty to the two counts of armed robbery and had been sentenced to a maximum term of 20 years' confinement in the state penitentiary on each count (to run consecutively).

■ Appellants, in these two assignments of error, contend that "misconduct and prejudicial, reversible error" was committed by the deputy prosecutor: (a) in telling

the jury in both his opening and closing arguments that Jennings had pleaded guilty to these charges and had been sentenced to two consecutive 20-year terms for his participation therein; and (b) in bringing out these facts in his direct examination of the witness.

There is no doubt that the testimony of Jennings, as appellants contend, was extremely important to the state's case against them, and especially with respect to its case against appellant Draper.

No objection was made by appellants' trial counsel to the introduction of this testimony. In fact, he interrogated Jennings on cross-examination regarding this matter. Nor did he take any exception to any of the court's instructions to the jury, which included the following:

"Instruction No. 15. I instruct you that a witness who, by his own testimony and admissions, connects himself with the commission of an offense and who, by his own testimony, attempts to connect another with the commission of such offense by claiming that such other person aided or abetted him in the commission of the offense, is known in law as an accomplice. I instruct you, therefore, that the witness Robert Jennings, in this case is an accomplice. The law permits an accomplice to give testimony on behalf of the State, and a defendant may be convicted on the uncorroborated testimony of an accomplice where the honest judgment is satisfied beyond a reasonable doubt. Still, a jury should act upon such testimony with great care and caution and subject it to careful examination in the light of other evidence in the case. The jury should not convict upon such testimony alone, unless after a careful examination of it, they are satisfied beyond all reasonable doubt of its truth.

"Instruction No. 16. Evidence, if any, that a witness has been previously convicted of a criminal offense is only a circumstance to be weighed by you in connection with the general credibility of the testimony of the party so convicted, and is admissible for your consideration only as bearing upon his general credibility and his worthiness of belief."

Appellants again contend that the absence of an objection is not fatal to their position because no instruction

could have been given which would have eradicated from the jury's mind the prejudicial effect of this testimony.

We have already held, in reference to appellants' first assignment of error, that the effect of what was said in the state's opening statement was not so prejudicial that it could not have been cured by an instruction, if requested.

It was entirely proper for the state to show why the witness Jennings (the alleged accomplice) was not being tried with the three appellants for his participation in these two armed robberies with which all four of them had been charged.

Appellants contend that the effect of bringing out the fact that Jennings had previously pleaded guilty to the charge and had been sentenced to two consecutive terms of 20 years each in the penitentiary was, as stated in their brief, as follows:

"The reaction of the jury would certainly be that if a man pleads guilty and gets 40 years there should be no reasonable doubt as to the truth of his story."

They also argue that the jury, because of the punishment given Jennings upon his plea of guilty, must have felt called upon to mete out "equal justice" in the disposition of the other three defendants, *i.e.*, that the jury had no choice but to convict appellants.

We are unable to follow the logic of this contention.

The only alternatives available to the state would have been to produce no evidence as to Jennings' status with respect to the charges and let the jury guess whether (a) he had never been arraigned, or (b) he had, upon arraignment, pleaded not guilty and was to be tried separately later, or (c) he had pleaded guilty and would be sentenced later.

In our opinion, the jury, in order to be able to intelligently evaluate Jennings' testimony as an accomplice pursuant to the court's instructions Nos. 15 and 16, was entitled to be told the true facts regarding his status with respect to the charges.

Appellants' counsel frankly states in his brief that he

has found no decision of this court that bears directly upon the situation involved in the case at bar.

Appellants cite several cases from other jurisdictions (Iowa, Alabama, and New York), each of which we have examined and find to be distinguishable from this case because the failure of defense counsel to make timely objection constituted a waiver according to the applicable rule in those states.

Reference is made by appellants to our decision in *State v. James,* 63 Wn. (2d) 71, 385 P. (2d) 558 (1963), in which James and one Topper were charged jointly in three counts with first degree murder, robbery, and grand larceny. Topper pleaded guilty prior to trial to the third count (grand larceny). During the trial, Topper was discharged from the first two counts. James was convicted on all three counts. Topper testified for the state. James' counsel (who did not represent Topper) became suspicious prior to the trial that Topper would subsequently be permitted to plead guilty to the grand larceny charge. During the trial, the prosecutor (in the absence of the jury) moved that Topper be discharged as a defendant provided that he testify fully as to all he knew about the crimes charged. The trial court approved this arrangement and told the jury that it had granted the prosecutor's motion upon the condition stated above. Topper thereupon took the stand and testified concerning his and appellant's acts in connection with the three crimes charged (his testimony covered 163 pages of the statement of facts). He then left the courtroom. In a unanimous en banc opinion this court stated:

"The die was cast when Topper left the courtroom; his counsel took no further part in the trial, and the court, in its final instructions, reiterated that Topper had been discharged. The jury could draw only one conclusion: the court was satisfied that Topper had testified *'fully as to all material matters within his knowledge.'* We conclude that the italicized portion of the court's remarks constituted a comment upon the evidence and an approval of the credibility of the witness. Thus, defendant James was deprived of a fair trial and is entitled to a new one." (p. 76)

In the case before us Jennings, the alleged accomplice, had pleaded guilty and had been sentenced two months prior to the trial of appellants. He was competent to testify at the trial. There was nothing conditional about his testifying. He was free to do so voluntarily if he wished. *State v. James, supra,* at page 77.

As mentioned above, Jennings had served 7 years in the state penitentiary prior to being paroled in 1958. He must have known the serious step he was taking when he pleaded guilty to these two charges of armed robbery in 1960. In any event, the trial court did not err in admitting evidence as to his plea of guilty and the sentence which he was given.

We conclude that the *James* case is not authority for granting a new trial to these appellants.

Nor do we think that our recent decision in *State v. Badda,* 63 Wn. (2d) 176, 385 P. (2d) 859 (1963), supports appellants' contention, although, in some respects, the situation was similar to that in the present case. There were other claimed errors which are not involved here. The defendant was granted a new trial on his appeal because:

"The combined effect of an accumulation of errors, no one of which, perhaps, standing alone might be of sufficient gravity to constitute grounds for reversal, may well require a new trial. . . ."

Appellants, in support of their statement that the effect upon the jury of Jennings' testimony regarding his plea of guilty and the sentence imposed thereon was seriously prejudicial, quote from portions of the record in *State v. Long, supra,* and *Draper v. Washington,* 372 U. S. 487, 9 L. Ed. (2d) 899, 83 S. Ct. 774 (1963), which involved appellants' application to the trial court for a free transcript to be used in their present appeal. Their application was denied because the trial court was of the opinion that their alleged grounds for appeal were frivolous. This court affirmed the trial court, but the United States Supreme Court reversed our judgment and remanded the cause with instructions to furnish them a free transcript.

The claimed effect of Jennings' testimony on the trial judge's comments in denying them a free transcript of the trial proceedings has no bearing on the present issue, which is whether appellants were prevented from having a fair trial because the jury were informed of the fact that Jennings had pleaded guilty 2 months before the trial and had been sentenced by the court at that time.

We are of the opinion that appellants' second and third assignments of error are without merit.

Appellants' fourth assignment relates to the admission of certain exhibits in evidence.

Exhibit 2 was a gun, which was found by a chamber maid, wrapped in a towel behind a radiator on the sixth floor of the Davenport Hotel, where all three appellants were registered guests at the time of the robberies (appellant Draper having registered under the name of Rodde). Exhibit 3 was another gun, which was found in the get-away car just after it collided with the police car.

The witness Jennings identified both exhibits 2 and 3. He testified that exhibit 3 was in appellant Draper's room at the Davenport Hotel just after the robberies took place and was taken out of the room by appellant Long's girl friend, who immediately returned to the room without it. Jennings admitted that he had taken exihibt 2 into the Downtowner Motel when it was robbed and had struck the room clerk on the head with it. Further, each of the two room clerks (employed by the motels respectively) testified that two guns resembled the guns used by the robbers in each robbery.

There was ample testimony regarding the identification of these two guns to warrant their admission in evidence.

Regarding the other six articles admitted in evidence, reference is made in appellants' brief only to a jacket, two hats, and sunglasses.

Appellants' trial counsel's objection to the admission of these articles in evidence was not made on the ground of insufficient identification but solely on the ground that there was no showing of continuous possession of them by the police between July 5, 1960, and the time of the trial.

The present objection is raised in appellants' brief for the first time on appeal. In any event, the trial court did not err in admitting these articles in evidence.

The remaining assignments of error (Nos. 5 to 8) are not discussed by appellants' counsel in the brief prepared by him but are presented in two typewritten briefs prepared by appellants pro se and designated as "Appellant's Opening Supplemental Brief" and "Appellant's Closing Pro Se Appeal Brief."

The assignments of error discussed in these pro se briefs are stated as follows:

" . . .

"5. The Court erred in not requiring identification of and proof of the existence of the Corporate Entities involved as well as of their ownership of the money involved in the alleged robberies.

"6. The Court erred in appointing an attorney for defendants during the empanelling of the Jury and in appointing but one attorney to represent all three defendants.

"7. The Court erred in permitting testimony as to the alleged confession of defendant Long and in not declaring a mistrial when it became clear in the testimony that such alleged confession had improperly implicated the other defendants.

"8. The Court erred in not granting the motion for new trial or the challenge to the sufficiency of the evidence."

Appellants pose seven questions which they claim are raised by their above-quoted assignments of error. Their argument takes a wide range and refers to several matters which are not in the record.

Referring to appellant's fifth assignment (that there was insufficient proof as to the existence of the party who claimed to have been robbed), it is argued that the clerks at the respective motels could not establish by their own testimony their right to the possession of the money taken from them by appellants.

We considered this same contention when it was advanced by appellants in *State v. Long, supra,* and answered it as follows:

"In their tenth assignment, the defendants contend that they were charged with robbing two specific companies that, in fact, were never proved to have been robbed. They base this contention on the fact that the two motels were incorporated, and that the state failed to prove their incorporation. This contention is without merit inasmuch as the evidence was that the defendants robbed the motels and took property from the possession of the clerks on duty. Proof of ownership of stolen property is not required—it being necessary only to prove that the property did not belong to the thief. *State v. Hatch,* 63 Wash. 617, 116 Pac. 286."

In our opinion the testimony of two motel clerks on this subject was competent, and, if believed by the jury, was sufficient to prove that in each instance appellants took the money belonging to the owners of the motels from the possession of their agents who were the lawful custodians thereof. In any event, there was no evidence that the money belonged to any of the appellants. Thus, there is no merit to appellants' argument on this assignment.

Appellants next contend that they were not appointed counsel to represent them until after several prospective jurors had been examined on the voir dire. The record affirmatively shows that their counsel was present and participated in the proceedings from the beginning. Hence we need not discuss this contention.

They further contend that the trial court erred in appointing only one attorney to represent the three defendants at the trial. There is nothing in the record to indicate that any of appellants ever expressed to the trial court any dissatisfaction with the appointment of the same attorney to represent all of them. Consequently, we cannot consider this objection which is raised for the first time on appeal. Furthermore, we are unable to find from our consideration of the record that any of the appellants were prejudiced by the appointment of joint counsel. No such prejudice was ever suggested to the trial court.

In assignment No. 7, appellants contend that the trial court erred in admitting certain testimony of Thomas Foley, then a deputy prosecutor, regarding an alleged con-

fession of appellant Long when it became evident that Long therein referred to appellant Lorentzen, who was not present at the time of Mr. Foley's interview with Long.

On direct examination, Mr. Foley testified:

"Q. What did Mr. Long tell you with reference to Mr. Lorentzen? A. Well, Long told me that he had known Lorentzen for a couple of weeks, that they had met at Redding, California, approximately two weeks before they came over that day, from the previous day from Seattle. Q. Who is 'they'? A. He and Ray Lorentzen, and Ray Lorentzen's wife. Q. Did he say where they were staying? A. They were staying in two rooms at the Davenport Hotel on the 7th floor, that Long was occupying one, and Ray Lorentzen and his wife were occupying the other. Q. Now, with reference to the subject of the motels, did you have any discussion with Mr. Long at that time concerning these motels? A. Yes. Q. What was that, please? A. I asked Mr. Long who was with him, when he, Long, held up these motels, the Downtowner Motel and the Travelodge Motel, and he told me that Raymond Lorentzen was with him when he held up the Travelodge Motel, and Tommy who he didn't identify otherwise, was with him when he held up the Downtowner Motel."

His cross-examination began as follows:

"By Mr. Lynch: Q. Mr. Foley, where was Mr. Lorentzen when you were questioning Mr. Long? A. Mr. Lorentzen had been taken to the police department at that time, the city jail, at the time I questioned Mr. Long. Q. My question was, Mr. Foley, was Mr. Lorentzen present or within earshot at any time when Mr. Long mentioned his name? A. No. Mr. Lynch: I move that any reference made by Mr. Long to Mr. Lorentzen be stricken and the jury instructed to disregard it as hearsay. The court: Do you wish to be heard? Mr. Johnson: What was the motion? Mr. Lynch: That all references made to Mr. Lorentzen by Mr. Long, out of the presence of Mr. Long, be stricken and the jury instructed to disregard it. The Court: The motion is granted, and the jury is instructed to disregard that. There will be an instruction on it later on."[2]

[2]Instruction No. 13, given at the end of the trial, reads as follows: "You are instructed that where two or more defendants are being tried jointly, a statement or confession made by one of them, made out of the presence of the others, is admissible in evidence against the one

The trial court was not asked to grant a mistrial. The court did grant the motion made by appellants' counsel that the portion of Mr. Foley's testimony which included any reference to appellant Lorentzen by appellant Long be stricken, and that the jury be instructed to disregard it. The jury was so instructed promptly and again at the end of the trial.

The prompt action of the trial court cured any error that could possibly have resulted from Mr. Foley's quoting appellant Long's statement to him that appellant Lorentzen and his wife had come to Spokane from Seattle the day before the robberies and had registered at the Davenport Hotel, and that Lorentzen had participated with Long in the robbery of the Travelodge Motel.

Appellants' assignment No. 8 is their contention that the trial court erred in denying their motion for a new trial and their challenge to the sufficiency of the evidence.

We have read the record with care and are of the opinion that the state produced sufficient evidence which, if believed by the jury, would support the verdict rendered in this case. We have not found in the record any prejudicial error which would have warranted the court in granting appellants a new trial.

We have thus far discussed and disposed of all of appellants' assignments of error. There are certain other contentions made in appellants' pro se briefs which should be noted.

■ Appellants assert that they were entitled to separate trials on each of the two counts charging armed robbery because they were separate and distinct crimes. Under RCW 10.37.060, the procedure that was followed is permissible. The state's evidence shows that the robberies were committed within a few minutes of each other in adjacent motels in downtown Spokane about 2 a.m., July 5, 1960, and that both robberies were planned and exe-

---

who makes the statement or confession, but you are instructed that the statements made by one defendant out of the presence of the others is not to be considered as evidence against any defendant who was not present when the statement or confession was made."

cuted by the same four men (the three appellants and Robert Jennings). In *State v. Brunn,* 145 Wash. 435, 260 Pac. 990 (1927), this court stated:

"We can and do hold, however, that the rule must never be so applied as to unduly embarrass or prejudice one charged with crime, or deny him a substantial right. The language of Mr. Justice Harlan, in the *Pointer* case, as hereinbefore quoted, is recommended to the study of all those concerned with the trial of causes where such joinders are involved." (p. 449)

In the present case, we are of the opinion that appellants were not prejudiced in any way by the joinder of the two counts in the information nor by being tried on both counts at the same trial. Furthermore, no motion was made in the trial court seeking separate trials on the two counts.

Appellants further contend that the trial court had no authority to impose consecutive sentences but only concurrent sentences. This contention is fully answered by our decision in *In re Grieve v. Smith,* 26 Wn. (2d) 156, 173 P. (2d) 168 (1946).

It is also asserted that the trial court could only impose a 10-year sentence upon a conviction of robbery. Appellants urge us to overrule our decision in *In re Alderman v. Timpani,* 56 Wn. (2d) 20, 351 P. (2d) 163 (1960), which is contrary to appellants' position. We think that the rule stated in that case is sound and we are not disposed to overrule it.

There is also a further contention that this court cannot now correct a violation of appellants' right to appeal by granting them an appeal to which they were entitled in 1960. See *State v. Long, supra,* and *Draper v. Washington, supra.* We think that the delay in having their appeal heard in this court because of the litigation referred to concerning appellants' right to a free transcript and statement of facts has no bearing on the case now before us.

Appellants have now received the right of appeal from their judgment and sentence guaranteed by Const. Art. 1, § 22. After giving careful consideration to all the points

on which appellants rely to show that prejudicial error occurred at their trial, we are unable to find any merit in them which would justify this court's granting the relief which appellants seek on their appeal.

In our opinion, appellants had a fair trial consistent with due process of law, and, accordingly, the judgments and sentences imposed on each of appellants are hereby in all respects affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

