[No. 40260.    Department Two.    May 1, 1969.]
THE STATE OF WASHINGTON, *Respondent*, v. MAURO MEDINA
VALENZUELA, *Appellant*.*

*W. L. Weigand, Jr.* (of *Lyon, Beaulaurier & Aaron*), for
appellant (appointed counsel for appeal).

*Lincoln E. Shropshire* and *Donald R. Shaw*, for respond-
ent.

DONWORTH, J.†—Defendant, Mauro Medina Valenzuela,
was charged by information filed on December 29, 1967
with two counts of unlawful sale of narcotics. He brings
this appeal from the judgment and sentence based upon his
jury conviction on both counts.

On January 5, 1968, prior to the trial, defendant moved
for a change of venue from Yakima County alleging that

*Reported in 454 P.2d 199.

†Judge Donworth is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

the charges involved had been given such wide publicity through television broadcasting and newspaper articles in Yakima County and the surrounding area, in a manner so prejudicial to defendant's interests, that it was impossible for him to have a. fair trial in that county by an impartial and unprejudiced jury. This motion was supported solely by affidavit of defendant's counsel alleging that the television coverage by Yakima television stations, KNDO and KIMA, and related newspaper coverage deprived defendant of his constitutional right to a speedy, fair and impartial trial by jury. No other affidavits or witnesses were produced to show such community prejudice which would have deprived defendant of his right to an impartial and unprejudiced jury trial.

After a hearing on the merits of the motion, the trial court entered a lengthy oral opinion in which it ruled that defendant's right to a trial by an impartial and unprejudiced jury would not be infringed upon by the news media's coverage. Thereafter, the court entered an order denying defendant's motion for a change of venue. Subsequently, on February 21, 1968, defendant was tried and convicted.

The record shows that the alleged prejudicial broadcast resulted from coverage by KNDO and KIMA of a marijuana raid conducted by Yakima County sheriff's deputies early the morning of December 31, 1967. This raid was the culmination of about 6 months of investigation made by a plain clothes, undercover agent, Charles Addone, into illegal narcotic activities in the Yakima Valley.

Before the raid took place, Robert McMillan, Chief Criminal Deputy of the Yakima County Sheriff's Office, called the news media in Yakima and informed them of the upcoming operation. The newspapers and radio stations indicated they were not interested in attending. But, KIMA and KNDO not only accepted the invitation, but also asked if they could film the raid. McMillan approved the film coverage with the restriction that no filming could be conducted in the house which was the target of the sheriff's midnight operations. KNDO and KIMA news representa-

tives then accompanied the sheriff's deputies in a patrol car to the scene. While the raid was in progress, they filmed the arrest, search and subsequent booking of a number of suspects, including the defendant.

On January 2, 1968, KNDO and KIMA ran the film strips with accompanying narration by the newscaster of what had taken place at the raid both on their evening and late evening newscasts. On KNDO, as the film was being shown, the newscaster noted in his narration of the events that the defendant (who was named) was one of those charged with the unlawful sale of marijuana. Only a fleeting glimpse of defendant could be identified in the film as the suspects passed in the camera's view. On KIMA, the newscaster narrated a similar account of the raid but included, along with the defendant's name, his age, the charge, his hometown, and the amount of bail set. This procedure was followed as to all those charged in connection with the raid. When the KIMA news film was shown in the courtroom, defendant's counsel noted that defendant's face was not shown and said:

> Valenzuela, . . . was shown. His face was not shown. It was from his neck down. I recognized him from his coat is all, and the previous pictures.

Following its showing of the film and the narration, KIMA added the following editorial comment:

> The films you have just seen of the marijuana raid and booking of suspects were edited carefully by the KIMA-TV News Department, to protect any innocent persons who may have been in camera range.
>
> We have made sure that no person accused or booked is identified in the film. We have consulted with the Yakima Prosecutor's office, and with officials of the American Civil Liberties Union . . . in making the decision to edit the film.
>
> The ACLU had issued a statement today, which said in part . . . quote . . . "It would appear that the TV coverage of the raids might jeopardize the possibility of a fair trial for those arrested, and endanger the successful prosecution of any who might be quilty [sic]."

We at KIMA agree with this statement. Yet we also maintain that the raids, accomplished with the use of undercover investigators, and conducted at night . . . are news . . . news to which the public is entitled.

We believe that in editing the raid films, as we have done, protects the rights of all concerned . . . including the public's right to know!

Both stations showed similar films and the coverage given to the event was about 2 or 2½ minutes in length. No evidence was introduced into the record as to the prejudicial effect of any newspaper articles.

The main issue determinative of this appeal is: Was there a manifest abuse of discretion by the trial court in denying defendant's motion for a change of venue on the grounds that he could not obtain a fair and impartial trial by jury in Yakima County and the surrounding area? We think the answer must be in the negative.

The statutes governing the change of venue in criminal cases, relevant to this case, read as follows:

RCW 10.25.010 Criminal actions—Where commenced. Except as otherwise specially provided by statute, all criminal actions shall be commenced and tried in the county where the offense was committed.

RCW 10.25.070 Change of venue—Procedure. The defendant may show to the court, by affidavit, that he believes he cannot receive a fair trial in the county where the action is pending, owing to the prejudice of the judge, or to excitement or prejudice against the defendant in the county or some part thereof, and may thereupon demand to be tried in another county. The application shall not be granted on the ground of excitement or prejudice other than prejudice of the judge, unless the affidavit of the defendant be supported by other evidence, nor in any case unless the judge is satisfied the ground upon which the application is made does exist.

In *State v. Lindberg*, 125 Wash. 51, 215 P. 41 (1923), we said at 55:

The purpose of a change of venue is to secure to the accused a trial before an impartial jury, and if the record

does not *disclose affirmatively* that the accused did not have such a trial, it is very persuasive of the fact that the trial court did not err in denying the change.

(Italics ours.) *See also State v. Beck,* 56 Wn.2d 474, 489, 349 P.2d 387, 353 P.2d 429 (1959-60).

■ In referring to the aforementioned statutes governing motions for change of venue in criminal actions, we said in *State v. Welty,* 65 Wash. 244, 118 P. 9 (1911) at 248-49:

> It is apparent, from a reading of these sections, that the granting or denying of the change of venue is a matter resting entirely in the sound judicial discretion of the trial judge. Such being the statute, the ruling of the trial court cannot be reversed upon appeal, unless the record contains some evidence of its gross abuse, or it is shown that the court's ruling was arbitrary. Such has been our holding whenever such a question has been before us. . . . The rule is not only based upon the statute, but is founded in reason. The trial judge is generally familiar with the local situation; he knows the prevailing sentiment of the people, in so far as it finds oft repeated expression; he knows all the facts and circumstances proper to be considered in determining the matter; he may know the persons who make affidavits suggesting undue excitement or prejudice and can properly estimate the weight to be given such affidavits. A judicial discretion, exercised under such circumstances, should not be interfered with, unless its abuse is so clearly manifest as to call for a reversal.

*See State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967); *State v. Beck, supra; State v. Brown,* 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948-49); *State v. Guthrie,* 185 Wash. 464, 56 P.2d 160 (1936).

In the instant case, the only evidence indicating that defendant would not get a fair and impartial jury trial is the unsupported affidavit of defendant's counsel. There is neither record of the voir dire examination of the jury nor is there any evidence which would indicate that the prejudice in the community, or of individual jurors, was such as to deny the defendant a fair and impartial trial by jury.

Defendant had the burden of showing that he could not obtain a fair and impartial jury trial and that the trial court had abused its discretion in refusing to grant the motion for change of venue. Our review of the record indicates that he failed to meet this burden of proof. In addition, the television news coverage was not of an inflammatory nature and the film strips and narration in the broadcast did not focus entirely on defendant. When defendant was shown, he was shown as one of a group of several suspects apprehended and no effort was made to single him out for special mention. In so ruling, however, we do not intend to encourage law enforcement agencies in this state in giving advance notice of police raids to the news media so the news media can be present. *See State v. Malone, ante* p. 612, 452 P.2d 963 (1969).

■ Defendant's final assignment of error relates to the alleged misconduct of one juror who fell asleep during the prosecution's closing argument, and the prosecutor had to have one of the jurors wake him up. Defendant concedes that he made no objection at that time and did not move for a mistrial at the time of the alleged misconduct. Where defendant made no motion for mistrial and in no way preserved an objection, he is deemed to have waived his right to claim error for the alleged misconduct of the jury. *See Casey v. Williams,* 47 Wn.2d 255, 287 P.2d 343 (1955).

The judgment and sentence of the trial court is affirmed.

HUNTER, C. J., HILL, HALE, and NEILL, JJ., concur.

June 25, 1969. Petition for rehearing denied.