[No. 242-41277-2.    Division Two.    January 7, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. SANDRA K. STILT-NER, *Respondent.*

34

*Lincoln E. Shropshire, Prosecuting Attorney, David Crossland,* and *Patrick H. Olwell, Deputies,* and *John Moore,* for appellant.

*Hovis, Cockrill & Roy* and *Ted A. Roy,* for respondent.

PETRIE, J.—Sandra Stiltner was a clerk in the department of the Yakima District Justice Court presided over by Judge Thomas E. Grady, Jr. By an amended information she was charged with having committed, on or about September 16, 1966, (1) grand larceny by embezzlement, and (2) second-degree forgery by "making a false entry on a public record or account."

At the conclusion of the trial, the court granted defendant's motion to dismiss the forgery count. The jury returned a verdict of guilty as to the grand larceny count, but the trial court subsequently granted defendant's motion in arrest of judgment and dismissed the larceny charge for lack of sufficient evidence to sustain the verdict. The state has appealed, assigning error both to the order dismissing the forgery count and the order dismissing the larceny count. The defendant has cross-appealed, in the alternative only, from a pretrial order of the court denying her motion for a change of venue.

The circumstances which led to the filing of the charges against Mrs. Stiltner came to light in 1968 as a consequence of an audit conducted by an examiner for the state auditor. Specifically, the basis for the two counts in the information revolves around certain court transactions and proceedings involving one, Darrell Bouslaugh, who had been tried and convicted of several traffic offenses in Judge Grady's court.

The record reveals that in court case No. 2325, Mr. Bouslaugh posted cash bail on July 6, 1966, of $166 for a traffic offense committed a few days prior thereto. Before this matter was brought to trial, he was arrested in mid-August for another traffic offense. This time a bail bond was posted (cause No. 2400) and he was brought to trial on both

charges on August 23, 1966. He was convicted, fined a total of $245 (including costs) and sentenced to serve 30 days in the county jail. His bail bond in cause No. 2400 was returned to the bondsman on August 24, 1966, but the cash bail posted in cause No. 2325 remained in the court's trust account until September 16, 1966. On this latter date, Sandra Stiltner issued two court receipts totalling $166 to the name of Darrell Bouslaugh (the original receipts being retained in the court file jackets), which had the effect of converting the cash bail to part payment of the fine imposed.

The next day, Saturday, September 17, 1966, Mr. Bouslaugh paid the balance of his fine, $79, at the county jail and he was released. He testified that the $79 was from funds in his property box retained by the jailer during his confinement. The following Monday morning, September 19, 1966, Mrs. Stiltner picked up the weekend bail posted at the county jail for causes pending before Judge Grady and also for those causes pending before Judge George H. Mullins, Jr., a district judge in another department of Yakima District Justice Court. Mrs. Stiltner received and receipted for bail in seven separate causes, two for Judge Grady's court (including the $79 in the Darrell Bouslaugh matter) and five for Judge Mullins' court. All five matters for Judge Mullins' court were posted to court records on the same date. Money for one of the causes in Judge Grady's court was posted on Tuesday, September 20, 1966. The $79 in the Bouslaugh case has never been posted to the court records in Judge Grady's court. The missing $79 is the basis of the embezzlement charge against Mrs. Stiltner.

The unofficial file jacket (kept for the convenience of court personnel) reflects on its face in Mrs. Stiltner's handwriting,[1] with no date of entry recorded, that Mr. Bouslaugh received "jail credit" for "26 2/3[sic] days"

---

[1]Judge Grady testified that Mrs. Stiltner told him, "That's my writing, but I don't know where the money is, Judge." Mrs. Stiltner testified that the writing "appeared to be mine."

served at $3.00 per day for a total equivalent of $79. That entry is the basis for the forgery charge. ·

There was testimony, which the jury could have believed, that "jail credit" is never posted on court files until after the fact of time served; that the days and dollar equivalent are posted to court records only when they are indicated on jail receipts (none was indicated in Mr. Bouslaugh's jail receipt); that once a prisoner is sent to the county jail, court personnel pay no attention to, and have no way of knowing, when prisoners are released or whether or not they are given jail time credit on fines unless the jail receipt reflects the same at some future time.

Official court records are kept in a registry and transcript. There is no responsibility upon the court to maintain any record of jail time for individual prisoners. Official jail records are kept by jail officials and not by the court.

Individual file folders for each defendant in Yakima District Court have been kept in substantially the same form since 1965. Various papers pertaining to the proceedings of an individual case are kept in these folders or jackets. Although the outside face of each jacket bears the designation "J. P. Accounting Record", Judge Grady explained that such files, showing a running record of proceedings, are unofficial records only—and particularly, the court has no way of keeping any official record of jail time served by any defendant unless so advised by jail officials.

■ In the face of this record, it seems apparent that the trial court properly dismissed the forgery count against Mrs. Stiltner. The rule in this jurisdiction, as well as elsewhere, is that in order to be the subject of forgery, the instrument which is forged must be such that if genuine it would appear to have some legal efficacy or be the basis of some legal liability. *State v. Kuluris,* 132 Wash. 149, 231 P. 782 (1925); 2 R. Anderson, Wharton's Criminal Law and Procedure § 641 (1957). Under no circumstances can it be said that Mrs. Stiltner's writing, if she made it, on the face of the Bouslaugh file jacket and showing the amount of "jail credit", available to Mr. Bouslaugh, had

any legal efficacy, nor could it be the basis for any legal liability. Such activity, therefore, does not provide a proper basis for the charge of forgery alleged against Mrs. Stiltner.

We turn next to the trial court's order granting defendant's motion in arrest of judgment and dismissing the grand larceny charge. Before attempting to resolve the issues presented by this assignment of error, we deem it necessary to ascertain the precise standard of review which should be applied in this instance.

The function of this court is no different from the function of the trial court when confronted with the motion to arrest judgment (based upon insufficiency of the evidence)—to ascertain, as a matter of law, whether or not there is sufficient evidence to establish each element of the crime charged. The defendant's plea of not guilty placed in issue every material element of the crime charged, which the state is required to establish, to the satisfaction of the jury, beyond a reasonable doubt. That burden may, obviously, be met by the presentation of direct evidence or by circumstantial evidence which tends to establish any given element or elements of the crime. When circumstantial evidence has been relied upon by the state to establish any element of the crime charged, the rule in this jurisdiction as to the sufficiency of such evidence has been repeatedly enunciated. The rule has been succinctly restated by another panel of this court:

> Although the circumstantial evidence in the case must be consistent with the hypothesis that the accused is guilty, and inconsistent with any reasonable hypothesis or theory of his innocence . . . , whether or not the circumstantial evidence excludes every reasonable hypothesis consistent with the appellant's innocence is a determination properly made by the trier of the facts. . . . This court's only function on appeal is to determine if there is substantial evidence in the record tending to establish circumstances upon which a finding of guilt can be predicated.

(Citations omitted.) *State v. Green,* 2 Wn. App. 57, 466 P.2d 193 (1970).

If, in order to establish any element of the crime charged, the jury must pyramid one inference on top of another, it cannot be said that there is substantial evidence tending to establish circumstances upon which a finding of guilt can be predicated. *State v. Sewell*, 49 Wn.2d 244, 299 P.2d 570 (1956).

Obviously, the mere possession of the money by Mrs. Stiltner on the morning of September 17, 1966, coupled with the failure to have it accounted for in the justice court records, is insufficient to sustain a conviction. Although Mrs. Stiltner did not recall the events surrounding the Bouslaugh case (understandably because 2 years had elapsed before she was asked about them), it is quite clear from the record that the usual custom, after picking up the money at the county jail, was to return it to the court and place it at the disposal of the clerk—in each of the two departments of the court—whose then current duties included posting such matters onto the court's records. In September, 1966, such duties were not being performed by Mrs. Stiltner. The defendant's possession of the funds during the 24-hour period prior to the time when it ought to have been properly posted was distinctly less than exclusive.

We are concerned, however, with the effect of the additional factor of the entries made on Mr. Bouslaugh's file jacket indicating that he had received jail credit of the equivalent of $79. From the direct evidence in the record, the jury was warranted in finding that Mrs. Stiltner made the entries. However, in order to find that such entry was *culpably* made, as opposed to its having been made innocently albeit erroneously, the jury would have been required to resort to inferences from the circumstantial evidence either (1) that the entry was made after Mrs. Stiltner had the $79 in her possession, or (2) that it was made prior thereto and a culpable intent arose subsequent to her receipt of the $79. In our opinion, the jury was certainly warranted in finding that Mrs. Stiltner made the entry knowing it to be false.

■ What then is the combined effect of her acknowledged possession of the money, total failure of its accountability on court records, plus the falsification of the unofficial court record? We are impressed by language of the Supreme Court of Nebraska:

> Human experience is that an innocent agent does not falsify records and facts to conceal unusual losses from his principal. It is a badge of fraud and evidence of a felonious intent. Such evidence is direct and not circumstantial. It is the usual way of establishing the intent with which an act is done. The jury could well say, as it did, that the acts of the defendant were done with a felonious intent.

*Hoffman v. State,* 164 Neb. 679, 687, 83 N.W.2d 357 (1957).

In our opinion, there was substantial evidence to support all the elements of the crime charged, the jury accepted such proof, and judgment on the verdict should not have been arrested.

Finally, we turn to the defendant's cross-appeal contending that the court should have granted her motion for change of venue.

■ A motion for change of venue in a criminal case is directed to the sound discretion of the trial court, and its decision with respect thereto will not be disturbed on appeal, absent a convincing showing of an abuse of discretion. *State v. Malone,* 75 Wn.2d 612, 452 P.2d 963 (1969); *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967). Where the record does not disclose affirmatively that the accused did not receive a trial before an impartial jury, it is very persuasive of the fact that the trial court did not err in denying the change. *State v. Valenzuela,* 75 Wn.2d 876, 454 P.2d 199 (1969); *State v. Lindberg,* 125 Wash. 51, 215 P. 41 (1923).

In the instant case, the evidence indicating that the defendant would not receive a fair and impartial jury trial is the affidavit of defendant's counsel, supported by the specific news releases of September, 1968 and January, 1969, some 8 and 4 months prior to date of trial. We note, with grave concern, that the news releases stray considerably

from the recommended standards set forth in the Statement of Principles of the Bench-Bar-Press of the State of Washington and Guidelines for the Reporting of Criminal Proceedings adopted March 26, 1966. However, the record does not contain the voir dire examination of the jury, nor is there any evidence[2] which would indicate that the prejudice in the community, or of individual jurors, was such as to deny the defendant a fair and impartial trial by jury. We cannot say that the trial court abused its discretion in denying the motion for change of venue. *State v. Valenzuela, supra.*

The judgment from which the state has appealed is reversed. This cause is remanded with instruction to reinstate the verdict of the jury and to proceed to judgment thereon.

ARMSTRONG, C. J., concurs.

PEARSON, J. (dissenting)—While the majority discussion regarding dismissal of the forgery count in the indictment against defendant correctly applies the law, I cannot agree with the majority holding regarding the trial court's refusal to grant a change of venue in this matter. Reversal of the trial court's arrest of judgment is also a disturbing matter, but it seems to be compelled by the rule long followed in testing the sufficiency of circumstantial evidence in Washington. *See State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967).

While I heartily concur that the news releases in question in this case constitute flagrant violations of the Statement of Principles of the Bench-Bar-Press of the State of Washington, and the Guidelines for the Reporting of Criminal Proceedings, adopted March 26, 1966, I cannot agree with the majority analysis of the legal significance of these reports.

---

[2]At times a procedure may be deemed inherently lacking in due process because the procedure employed by the state involved such a high probability that prejudice will result. *Estes v. Texas,* 381 U.S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628 (1965). However, we do not deem the facts in this case warrant such exception to the general rule of a necessity to establish identifiable prejudice.

In consideration of a change of venue question, a beginning point for analysis is the decisions in *Estes v. Texas,* 381 U.S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628 (1965), *rehearing denied* 382 U.S. 875, 15 L. Ed. 2d 118, 86 S. Ct. 18 (1965), and *Sheppard v. Maxwell,* 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966). In these cases, no identifiable showing of prejudice was required. Rather, the procedure was found to be defective in that prejudice was so likely to result that the process was inherently lacking in due process. Whether such a lack of due process exists is a question to be determined by the appellate court after an independent review of all the relevant circumstances.[3] That is, the appellate court is mandated to review the record and from this independent review to determine whether or not the trial court's refusal to grant a change of venue denied the defendant a fair and impartial trial. *Maine v. Superior Court,* 68 Cal. 2d 375, 438 P.2d 372, 66 Cal. Rptr. 724 (1968), *noted* 56 Cal. L. Rev. 1703 (1968); *People v. Tidwell,* 3 Cal. 3d 62, 473 P.2d 748 (1970).

After examining this record, I cannot agree with the majority that the defendant could have received a fair and impartial trial by jurors exposed to the press coverage surrounding this case. The Yakima Herald Republic, the record discloses, is the only daily newspaper in Yakima County, and it has general circulation in that county. The record contains four articles that appeared in that newspaper. In addition, radio and television coverage of the story was extensive. Thus, it seems apparent that considerable

[3]The Washington Supreme Court has long followed a different analysis in these matters. Its test of abuse of discretion is one almost impossible to meet. *See State v. Malone,* 75 Wn.2d 612, 452 P.2d 963 (1969), wherein no abuse of discretion was found in failure to grant a change of venue, even though a search of appellant's residence during a narcotics raid was televised at the invitation of the Yakima County Sheriff. Such analysis often appears to be based in the jurisprudentially outworn and never acceptable concept that the guilty are entitled to fewer protections than are the innocent. On the contrary, of course, the seemingly guilty must be afforded the full protection of due process or no man may ever confidently stand before the bar of justice, sure that his guilt or innocence will be established finally only according to the precepts of the law.

community interest existed in the case. This interested community was told through its only daily newspaper's reports of statements by the county prosecutor that (1) a shortage had been discovered in the accounts of the justice courts in the county; (2) that the defendant, Sandra Stiltner, was arrested in connection with this shortage; (3) that the four other women who worked in the office of the justice court had each received a letter[4] from the prosecutor, stating that, based on lie detector tests and handwriting examinations, she had been absolved of guilt. The inference is, of course, completely obvious—four of five suspects were absolved by the prosecutor and the fifth arrested, so of course, the fifth who refused to take a lie detector test, must be guilty. Another article discloses that Mrs. Stiltner had been arrested and bond set in her case. It is stated that she had earlier resigned her position. (The record shows her ill health forced her to do so, but the story is so worded that the inference she quit under fire could be drawn.) Still another story told of Mrs. Stiltner's plea of innocent to the charges brought against her. Again, as in the other stories, the charges were detailed. Finally, an earlier article in the same newspaper stated that four of the clerks had at that time voluntarily taken lie detector tests and had been cleared. The prosecutor later stated in a published interview that four clerks had voluntarily submitted to lie detector examination and the three who had actually taken the examination had been cleared; the fourth test was conducted later and resulted in clearing that clerk. Again, the inference that the four innocent clerks had voluntarily acted to demonstrate their innocence and that the fifth clerk—the guilty one—was seeking to hide her guilt, is clear from the newspaper account.

The polygraph is not an infallible instrument. Even in the case of skilled operators, the machine is susceptible to error. The newspaper accounts did not mention this fact, nor did they note that the results of a polygraph examination are well-nigh universally inadmissible in evidence

---

[4]Portions of the letter were printed verbatim in the newspaper.

against a defendant. The result of the conduct of the prosecutor was thus to place before the general populace of Yakima County his belief, wrapped in the cloak of scientifically derived fact—though science is apparently unwilling to accept with a high degree of reliability the test done here—that the defendant was guilty and was trying to hide her guilt from the people with whom she had spent her entire life.

The defendant grew up in the Yakima area and worked in the justice court there almost from the time she graduated from high school. She was thus presumably well known in Yakima County, which has a relatively small and largely rural population. In this county, the defendant was brought to trial. The prosecutor indeed proved that there had been a theft and that Sandra Stiltner had had the missing money in her possession for a time. To show that she had embezzled these funds, the prosecutor depended upon a file jacket with certain writing that the defendant admitted was hers. There is a reasonable explanation for this entry, consistent with the defendant's innocence. She may have received a request for information from the jail and made this entry in the course of determining the amount of money outstanding in the case. Another clerk made a somewhat similar error, but was able to discover other documents which explained the apparent shortage in that case. As the majority points out, the fact that Mrs. Stiltner could not remember this case after 2 years is understandable in the case of one who deals with such cases on a daily basis. Thus, consistent with the evidence, the jury could have found Mrs. Stiltner to be guilty of nothing more than a faulty memory. It is impossible to say that the jury did not exorcise from their minds reasonable doubts about the defendant's guilt raised by the evidence on the basis of the statements of the prosecuting attorney. He stated in the only daily newspaper in the county that he had investigated and on the basis of scientific fact he had exonerated four of five suspects and had charged the fifth. At trial, it would have been both a violation of the Canons

44

of Professional Ethics and reversible error for the prosecutor to express to the jury his individual opinion on the guilt or innocence of the defendant. *State v. Long*, 65 Wn.2d 303, 396 P.2d 990 (1964). Expression of such opinions by the prosecutor in the only daily newspaper in the county regarding a case which had aroused considerable public interest ought not to be better received by the law. The dubious and distorted nature of this proof remained outside the evidentiary record at trial. Because it is impossible to say that the jurors did not use these published statements to soothe their doubts about the evidence, I cannot say that it is clear to me that Sandra Stiltner's guilt was established by evidence properly adduced according to due process of the law. Therefore, I must dissent from the result reached by the majority. I would grant defendant a new trial in a more neutral location.

Petition for rehearing denied February 9, 1971.

Appealed to Supreme Court February 16, 1971.