[No. 974-1. Division One—Panel 1. December 20, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. WESLEY K. MOXLEY, *Appellant.*

154

*Bannister, Bruhn & Luvera* and *Paul N. Luvera,* for appellant (appointed counsel for appeal).

*Earl F. Angevine, Prosecuting Attorney,* and *Gilbert E. Mullen, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant, after jury trial, was convicted of arson in the first degree. He appeals.

Dorothy Moxley, defendant's wife, was married to the defendant in 1963. Two children were born of that marriage. This was the second marriage for both, and Dorothy Moxley, as a result of a prior marriage, had a child. When she married defendant she owned a home which was awarded to her in her previous divorce. Defendant, his wife and the three children, lived in this home after their marriage.

On July 22, 1970 Dorothy Moxley commenced a divorce action against the defendant. After the divorce action was started, but before the divorce decree was entered, Dorothy Moxley and defendant voluntarily separated. Defendant was no longer living in the home at the time of the alleged arson.

About midnight on August 22, 1970, a fire occurred in the home owned by Dorothy Moxley and occupied by herself and her children. At that time no divorce decree had been granted. It actually was not granted until February 1, 1971.

Defendant was charged with the crime of arson in the first degree. The information charging the defendant alleged the defendant did "burn or set on fire, in the nighttime, the dwelling house of another."

Defendant, by way of pretrial motion, sought to strike the name of his wife, Dorothy Moxley, from the list of witnesses and to prohibit testimony from her that defendant had threatened to kill her on the day of the fire. The defendant's pretrial motions were denied. At trial Dorothy

Moxley was permitted to testify against the defendant that on the day of the fire he had come to the house and had threatened to kill her. The jury found the defendant guilty and this appeal followed.

■ Defendant contends that the court erred in refusing to strike the name of Dorothy Moxley, defendant's wife, as a witness and in permitting her to testify against him. He relies upon RCW 5.60.060, which prohibits one spouse from testifying against the other without the other's consent, and which further prohibits either spouse during marriage or afterward, without the consent of the other, from testifying to any communication made by one to the other during marriage. *State v. Tanner*, 54 Wn.2d 535, 341 P.2d 869 (1959). The fact that the marriage, since separation and subsequent filing of a divorce suit by the wife, may be a shell has no bearing upon the determination of this appeal. The marriage exists until terminated by divorce decree. *See State v. Grasser*, 60 Wn.2d 343, 374 P.2d 149 (1962). The statute, however, describing marital privilege, is inapplicable in the case of a "criminal action or proceeding for a crime committed by one against the other."

The state contends that a charge of arson in the first degree under RCW 9.09.010 is such a case, thereby rendering the wife competent to testify. RCW 9.09.010 provides:

Every person who shall wilfully and maliciously—
(1) Burn or set on fire in the nighttime the dwelling house of another, or any building in which there shall be at the time a human being; or
(2) Set any fire manifestly dangerous to any human life, shall be guilty of arson in the first degree and be punished by imprisonment in the state penitentiary for not less than five years.

The wife testified that about 6 p.m. on the day of the fire defendant came to her dwelling house occupied by her and the children. He was very angry, called her dirty names, and threatened to kill her, and then left. She retired about 10 p.m. that night and took several tranquilizers to enable her to sleep. About midnight her son Gary awoke her, stating "Dad set the house on fire." At the time the bed-

room was filled with smoke. She and the children immediately got out of the house. The state in effect contends that the defendant's act in setting his wife's dwelling house on fire in the nighttime, at a time when she and the children were in it, was not only "manifestly dangerous" to the wife, but was defendant's method of carrying out his threat.

Prior Washington decisions have treated RCW 5.60.060 as expressive of the common law permitting the wife to testify against the husband only in the case of a crime committed against the other in the nature of personal violence. The necessity of personal violence has continued to be approved. Thus, in *State v. Kephart,* 56 Wash. 561, 106 P. 165 (1910), a defendant was charged with arson in burning a barn belonging to his wife, arson being then defined under Ballinger's Code § 7094,[1] the text of which is set out in the margin. The court held that under Ballinger's Code § 5994(1) (now RCW 5.60.060(1)), the wife was incompetent to testify against her husband without his consent because the crime charged was a crime against property. There was neither charge nor evidence that the barn was occupied by any person at the time of the fire. In other cases, before and since *Kephart,* when personal violence against the wife has not been involved, the wife has been held incompetent to testify against her husband-defendant charged with the crime or offense involved. *State v. Grasser, supra* (nonsupport of wife and children); *State v. Beltner,* 60 Wash. 397, 111 P. 344 (1910) (incest by husband); *State v. Winnett,* 48 Wash. 93, 92 P. 904 (1907) (statutory rape of wife by husband prior to marriage); *State v. Kniffen,* 44 Wash. 485, 87 P. 837 (1906) (bigamy); *Speck v. Gray,* 14 Wash. 589, 45 P. 143 (1896) (seduction of wife and alienation of her

---

[1]"Arson is the wilful setting fire to any structure, as defined in this article, by any person, whether said structure be occupied or vacant, and whether the same be owned by the person or persons setting fire thereto or by any other person or persons, or by any corporation, or by the person or persons setting fire thereto and any other person or persons, or by the person or persons setting fire thereto and any corporation, and whether such structure be partially erected or fully completed."

affections by third person during marriage). *Cf., State v. Snyder,* 84 Wash. 485, 147 P. 38 (1915) (statutory rape of child of wife; carnal knowledge of child). *Contra, Chamberlain v. State,* 348 P.2d 280 (Wyo. 1960). *Cf., State v. Robbins,* 35 Wn.2d 389, 213 P.2d 310 (1950); *State v. Clark,* 26 Wn.2d 160, 173 P.2d 189 (1946); *State v. McGinty,* 14 Wn.2d 71, 126 P.2d 1086 (1942). Indeed, the 1965 legislative amendment to RCW 5.60.060, which permitted testimony by one spouse against the other for a crime committed against any child of whom the objecting spouse is a parent or guardian, as distinguished from a crime involving personal violence to such spouse, is a recognition that the amendment was required to overcome what was apparently believed to be the Washington rule to the contrary. The fact that the legislature in amending the statute in 1965 did not change the long-followed *State v. Kephart* rule, *supra,* indicates legislative acquiescence in the *Kephart* rule. *See Gilkes v. Beezer,* 4 Wn. App. 761, 484 P.2d 493 (1971); *State v. Bryant,* 3 Wn. App. 15, 472 P.2d 408 (1970). At the time of the 1965 amendment, however, the *Kephart* rule had not been applied to a first-degree arson charge under RCW 9.09.010 involving a case in which the wife was in her dwelling at the time of the nighttime fire set by him, or in a case in which the husband, shortly prior to the fire so set, had threatened to kill his wife, followed by the nighttime fire set to her dwelling by the husband shortly thereafter.

■ It is true it has been held elsewhere that even though the wife is in the dwelling at the time of the fire, a charge of arson does not charge a crime of personal violence against the wife so as to render her competent to testify against her husband. *State v. McMullins,* 156 Miss. 663, 126 So. 662 (1930). *See* 5 Am. Jur. 2d *Arson and Related Offenses* § 57 (1962, Supp. 1971). *McMullins,* however, did not involve a threat by the defendant husband to take his wife's life, followed in a matter of hours by setting a nighttime fire to the wife's dwelling then occupied by her. In the instant case, it is true, a crime against property is involved. Involved also, however, is a crime of personal

violence against the wife. In so holding, we do not adopt the rationale of *Peters v. District Court,* 183 N.W.2d 209 (Iowa 1971), in which the court upheld the right of the wife to testify in an arson prosecution against the husband who set fire to the house jointly owned by them, the wife then being in the house. *Peters,* contrary to *State v. Kephart, supra,* declined to limit the admissibility of testimony of one spouse against the other to crimes involving personal violence of one against the other. We merely hold that, under the facts here, a charge of first-degree arson against the husband for a fire set by him shortly after a threat to kill his wife is a crime of personal violence and that, accordingly, RCW 5.60.060 does not preclude her from testifying against her husband.

■ Defendant contends that the defendant's threat to kill his wife is inadmissible because it is a "communication made by one to the other during marriage" within the meaning of RCW 5.60.060. We disagree. Even if a threat can be said to be such a communication, the testimony is admissible by virtue of the statutory exception which permits the admission of such testimony in the case of a "criminal action for a crime committed by one against the other." Furthermore, we do not agree that the threat to kill the wife is protected by marital privilege against disclosure. It is not a communication induced by the marital relationship. *See State v. Americk,* 42 Wn.2d 504, 506, 256 P.2d 278 (1953); J. Wigmore, Evidence § 2239 (1961, Supp. 1970).

■ Defendant contends that the wife's testimony was irrelevant. [The testimony given concerning the threat was relevant to the issue of whether the defendant set the fire and whether he set the fire willfully. It is true that motive is not an ingredient of first-degree arson. Nevertheless, it is admissible evidence relevant to the issues described. *See State v. Bergman,* 171 Wash. 67, 17 P.2d 604 (1932); *State v. Americk, supra,* citing with approval *People v. Bates,* 271 App. Div. 550, 67 N.Y.S.2d 1 (1947).

■ Defendant contends the court erred in denying his

motions for change of venue or continuance on account of pretrial publicity. The basis of his first motion was a 4-paragraph newspaper story published on the first page of the Skagit Valley Herald on September 2, 1970, describing the filing of the first-degree arson charge against the defendant and calling attention to the fact that the Moxleys had separated prior to the fire. Defendant's second motion filed 5 days before trial was based on a 4-paragraph newspaper story in the same newspaper concerning a second fire which burned down the dwelling and called attention to the family's need for assistance. There were also daily broadcasts over a radio station in the vicinity several times each day containing the same information as contained in the newspaper story but adding that the house was uninsured. The trial court denied this motion. At trial the defendant renewed his motion and his renewed motion was denied. On voir dire examination, preliminary questions were asked about whether the respective jurors had heard about the case or had any preconceived bias or prejudice. Some jurors had not heard about the fire. Furthermore, nothing in the answers of the individual jurors indicated even probable bias or prejudice against the defendant. The court concluded "Nobody indicates that would be a problem." The granting of a motion for change of venue or continuance on account of pretrial publicity is within the trial court's discretion, reviewable only for abuse. *State v. Malone,* 75 Wn.2d 612, 452 P.2d 963 (1969); *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967). *See also State v. Stiltner,* 4 Wn. App. 33, 479 P.2d 103 (1971); *State v. Valenzuela,* 75 Wn.2d 876, 454 P.2d 199 (1969). We find no abuse of discretion.

 Defendant contends he was deprived of a fair trial because of several incidents that occurred during defendant's cross-examination by the prosecutor. We have examined the record but find it unnecessary to describe the individual incidents in detail. In general, they consist of several questions asked in apparent good faith during cross-examination, objected to and then argued while the

jury was excused. The objections made were sustained in whole or in part, or the subject was not pursued at the suggestion of the trial court. In another instance, the prosecutor called a police officer then properly in the courtroom to counsel table to assist the prosecutor with records and files. Defendant claims he was prejudiced by the questions asked and the incident concerning the officer in that the jury might have drawn adverse inferences from the occurrences described. We find no reversible error. The asking of questions successfully objected to and the excusing of the jury for the purpose of permitting argument by counsel on objections made are common occurrences in the trial of cases. The orderly conduct of a trial is a "matter wholly within the discretion of a trial court." *Smyser v. Smyser*, 19 Wn.2d 42, 50, 140 P.2d 959 (1943). We find no abuse of that discretion here. Furthermore, any improper inferences that a jury might have drawn from the occurrences could have been obviated by protective instructions in addition to the instructions given. Without request for such protective instructions, it is too late to claim error. *See State v. Smith*, 5 Wn. App. 237, 487 P.2d 227 (1971); *State v. Richard*, 4 Wn. App. 415, 482 P.2d 343 (1971); *State v. Berkins*, 2 Wn. App. 910, 471 P.2d 131 (1970).

■ Defendant next contends that the court erred in his instruction No. 6 on reasonable doubt, and further erred in refusing to give defendant's proposed instruction No. 7 containing suggested definitions of the words "dwelling house," "nighttime," "owner," "willfully," and "feloniously." Although we are not persuaded by the argument advanced, we cannot consider the errors assigned because the statement of facts does not contain the instructions given or refused as required by CAROA 34(8). That rule reads:

(8) In all cases whenever any error is predicated upon a ruling relative to an instruction given or proposed, it will be necessary to include in the statement of facts all of the instructions given by the court and those proposed instructions concerning which error is assigned.

161

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

Petition for rehearing denied January 10, 1972.

Review denied by Supreme Court February 9, 1972.